617 A.2d 1335

**Steven L. BURKE, Appellant,**

v.

**VALLEY LINES, INC. and Carolyn R. Bowser, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1992.

Filed Dec. 29, 1992.

Patrick J. Demay, Bethel Park, for appellant.

John W. Jordan, IV, Pittsburgh, for appellees.

Before ROWLEY, President Judge, and POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Armstrong County which granted appellees' motion for post-trial relief. Herein, we are presented with a question of first impression: Whether an injured motorist is required to obtain the full policy limit under his own uninsured motorist coverage before he may collect a judgment from a tortfeasor who is covered by the Pennsylvania Insurance Guaranty Association Act?

Our answer is that, as a general rule, an injured person may not settle with his uninsured motorist carrier for less than the policy limits and then expect to recover any monies from Pennsylvania Insurance Guaranty Association ("PIGA") or its insured. Since that is precisely the holding below, we affirm.

The record reveals the following: Appellant's personal injury suit stemmed from an automobile accident which he had with Carolyn Bowser while she was driving a school bus for her employer, Valley Lines, Inc. At the time of the accident, appellees, Ms. Bowser and Valley Lines, were insured by Transit Casualty Insurance Company. Since Transit Casualty was declared insolvent, defense of this claim was assumed by PIGA.

Due to the fact that appellees' insurance carrier was insolvent, appellant filed an uninsured motorist claim with his insurance company. At the time of the accident, appellant was an insured under three separate policies of automobile insurance, covering four vehicles, issued by Nationwide Mutual Insurance Company. The "stacked" uninsured motorist coverage was $200,000. On November 6, 1987, appellant settled his uninsured motorist claim with Nationwide for the sum of $85,000.00.

Prior to trial, appellees filed a motion for summary judgment, contending that appellant could not recover any damages due to his failure to "exhaust" his rights under his uninsured motorist policies. Citing the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.503, appellees argued that by settling his uninsured motorist claim for less

than the policy limits, appellant failed to exhaust his rights under that policy and therefore was not entitled to recover further. The lower court disagreed on the basis of *Bethea v. Forbes,* 519 Pa. 422, 548 A.2d 1215 (1988), and held that appellant's suit was not barred by his settlement with Nationwide.

On September 12, 1990, the jury determined that appellant was entitled to damages in the amount of $400,-000.00, but also found that appellant was 50% negligent. Thus, appellant was entitled to a molded verdict in the amount of $200,000.00. Appellees filed post-verdict motions wherein they raised an argument which was similar to that raised in their motion for summary judgment, i.e., appellant was not entitled to recover from them since he settled his uninsured claim for less than the policy limits *and* the molded damages were less than PIGA's liability limit. Armed with the knowledge that the molded verdict was less that the statutory liability cap of $300,000.00, 40 Pa.S.A. § 1701.201, and that appellant had settled his uninsured claim for less than his policy limits, the lower court agreed with appellees and entered judgment in favor of appellees. This appeal followed.

Our Supreme Court, in *Bethea v. Forbes,* 519 Pa. 422, 548 A.2d 1215 (1988), faced an identical situation to that presented to the court below at the point when appellees filed their motion for summary judgment. In *Bethea, supra,* the tortfeasor's insurer was insolvent, and the plaintiffs settled their uninsured motorist claims for less than the available policy limits. PIGA had assumed the defense and filed a motion for summary judgment, wherein PIGA, citing 40 Pa.S.A. § 1701.-503(a), argued that the plaintiffs' failure to exhaust their rights under their uninsured motorist policy precluded recovery against the tortfeasor. The trial court agreed and entered summary judgment in the tortfeasor's favor. This court affirmed that decision.

However, the Supreme Court reversed, stating:

It is axiomatic that, in a common law tort action, the tortfeasor is liable for all injury caused by his negligence or other lawful conduct. *E.g., Pavorsky v. Engels,* 410 Pa. 100,

188 A.2d 731 (1963); *Menarde v. Philadelphia Transportation Co.*, 376 Pa. 497, 103 A.2d 681 (1954); *Offensend v. Atlantic Refining Co.*, 322 Pa. 399, 185 A. 745 (1936). It is also a fundamental and general principle that a plaintiff in such action is entitled to compensation from the tortfeasor to the full extent of the injury sustained. *E.g., Incollingo v. Ewing*, 444 Pa. 299, 307, 282 A.2d 206, 228 (1971); *Corcoran v. McNeal*, 400 Pa. 14, 161 A.2d 367 (1960). *It is clearly within the realm of possibility that Mr. Forbes, the alleged tortfeasor in the instant matter, injured the plaintiffs to an extent that exceeded the uninsured motorist coverage in the GEICO policy.* Therefore, plaintiffs' settlement under that policy cannot deprive them from the legal right to seek full compensation from the tortfeasor, even if the effort presents little or no prospect for satisfaction.

\* \* \* \* \* \*

In view of what we have said, the trial court's order dismissing the plaintiffs' tort action was palpably erroneous. [PIGA]'s role in the case was strictly in terms of defending the alleged tortfeasor with respect to the claims against him; it was not defendant against a claim under the Insurance Guaranty Act.

*Bethea*, 548 A.2d at 1217. (Footnote omitted. Emphasis added.)

Thus, it is clear that the lower court properly permitted the appellant to proceed with his tort action against appellees, despite the fact appellant settled with his uninsured carrier for $85,000.00, far less than his aggregate policy limit of $200,-000.00.

However, the fact that appellant was properly permitted to proceed to trial against appellees does not also mean that appellant can recover the entire jury award from PIGA or appellees. The Pennsylvania Insurance Guarantee Act, 40 Pa.S.A. § 1701.503(a), provides:

(a) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, *shall first be required to exhaust his right under such policy.* Any

amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy. (Emphasis added).

Although no Pennsylvania Court has directly defined what it means to "exhaust" one's rights under an uninsured motorist policy when the primary insurer is insolvent and PIGA takes over the tortfeasor's defense, we do have some guidance from Justice Zappala of the Pennsylvania Supreme Court. In his Concurring Opinion in *Bethea*, 548 A.2d at 1218, Justice Zappala stated: "I would hold that the settlement of the uninsured motorist claim for less than the limits of coverage is a failure to exhaust the claimants' rights under the policy which precludes recovery under the [Pennsylvania Insurance Guaranty Association] Act." In so opining, Justice Zappala relied, in part, upon the decision of the Washington Court in *Prutzman v. Armstrong*, 90 Wash.2d. 118, 579 P.2d 359 (1978). In *Prutzman, supra,* the Washington Court was presented with facts very similar to those *sub judice* and was asked to interpret an analogous provision of the Washington Insurance Guaranty Association Act.[1] Therein, the Washington Court stated:

> This exhaustion provision is apparently designed to limit WIGA liability to situations in which no other source of recovery for damages exists.... Her settlement for less than the $15,000 policy limit is inadequate to constitute exhaustion under the statute. Any other interpretation would furnish no incentive for plaintiffs to seek an adequate settlement from their own insurer because they could always force the WIGA to pay the difference between the settlement and the actual value of their claim.

*Prutzman,* 579 P.2d at 362. *See also, Spearman v. State Sec. Ins. Co.,* 57 Ill.App.3d 393, 14 Ill.Dec. 729, 372 N.E.2d 1008 (1978) (mere filing of uninsured motorist claim followed by carrier's disclaimer of coverage does not amount to "exhaus-

1. In so far as the Insurance Guarantee Association Act is a uniform law promulgated by the National Association of Insurance Commissioners and is adopted by most states, the judicial construction given to such legislation by the courts of our sister states may be considered when interpreting the act. 1 Pa.C.S.A. § 1927.

tion"; the claim must proceed to arbitration); *Henninger v. Riley*, 317 Pa.Super. 570, 464 A.2d 469 (1983) (claimant may not proceed against PIGA until the claimant has complied with § 1701.503(a) by exhausting his claims against other solvent insurers).[2]

Today, we explicitly rule that settlement of an uninsured motorist claim for less than the limits of coverage is a failure to exhaust the claimant's rights under the policy which precludes recovery pursuant to the Pennsylvania Insurance Guaranty Association Act. 40 Pa.S.A. § 1701.101 *et seq.* The purpose of PIGA is to provide a measure of protection to policyholders and claimants who are faced with financial loss because of the insolvency of an insurance carrier. 40 Pa.S.A. § 1701.102; *Bethea*, 548 A.2d at 1216.[3] PIGA exists for those claimants of insolvent insurers who have no other source of insurance from which to recover their losses. PIGA was not designed to provide claimants with an alternative source of recovery equal to the insolvent insurer's coverage limits (or PIGA's liability cap) less whatever amount the claimant may have *unilaterally* agreed to accept in settlement of his claims under other insurance policies. *See,* Concurring Opinion by Zappala, J., *Bethea*, 548 A.2d at 1218; *Prutzman*, 579 P.2d at 362. Rather, PIGA was designed to provide claimants with a recovery equal to the insolvent insurer's policy limits (or PIGA's liability cap) less whatever amount the claimant may have recovered by *exhausting* his rights under any other

---

**2.** Although *Henninger, supra,* addresses a similar issue to that raised herein, it does not directly address the question of whether settlement of an uninsured motorist claim for less than the policy limits constitutes "exhaustion" of one's rights under that policy. Rather, *Henninger, supra,* involves a situation where the plaintiff failed to make any claim against his uninsured carrier prior to filing suit against the tortfeasor who was defended by PIGA. This Court held that the plaintiff therein was subject to the exhaustion requirement of 40 Pa.S.A. § 1701.503, but failed to enforce their uninsured claim, thus, barring recovery from PIGA. *Henninger*, 464 A.2d at 473.

**3.** Even with the existence of PIGA, the Legislature anticipated that some claimants and insureds would suffer some amount of financial loss due to the insolvency of an insurer, because PIGA's obligation is limited to $300,000.00 less the $100.00 deductible. 40 Pa.S.A. § 1701.-201(b)(1)(i). *Blackwell v. PIGA*, 390 Pa.Super. 31, 36, 567 A.2d 1103, 1106 (1989).

policy of insurance. *E.g., Blackwell, supra* (uninsured motorists benefits collected are subtracted from the statutory maximum recoverable from PIGA); *McMahon v. Caravan Refrigerated Cargo,* 406 Pa.Super. 303, 594 A.2d 349 (1991) (trial court properly subtracted claimant's uninsured motorist recovery from PIGA's statutory cap).[4]

To rule otherwise would invite collusion between a claimant and his uninsured motorist carrier. They could agree to settle for less than the claimant's actual damages, knowing that PIGA was responsible for the remainder. We must remember that PIGA was enacted to assume the responsibilities of *insolvent* insurers, not solvent insurance carriers. *See,* Concurring Opinion by Zappala, J., *Bethea,* 548 A.2d at 1218–1219.

■ Since appellant settled his uninsured motorist claim for less that his policy limits of $200,000.00, appellant has not exhausted his rights under that policy and, therefore, may not recover from PIGA. 40 Pa.S.A. § 1701.503(a). Having determined that appellant may not recover against PIGA, we must next face the question of whether appellant is also barred from recovering his $200,000.00 damage award from appellees. Given PIGA's release from all financial responsibility as a direct result of appellant's failure to exhaust his uninsured policy rights, we hold that appellant is likewise barred from recovering from appellees. Any other holding would render the "exhaustion" provision of the Insurance Guaranty Act meaningless. *See, White v. Accardo,* 15 D. & C.3d 609, 617 (1980).

If appellees were now personally responsible for appellant's damages award, they would be without any source of insurance protection to bridge the gap between appellant's uninsured motorist settlement of $85,000.00 and the $200,000.00 award. 40 Pa.S.A. § 2000(d) (uninsured carrier has no right of reimbursement directly from the insured of an insolvent carrier). To expose appellees to such a financial loss (which is

**4.** In neither *Blackwell, supra,* nor *McMahon, supra,* was the question of "exhaustion" addressed, since in both those cases the claimant had already recovered the policy limits of their uninsured motorist coverage before making a claim against PIGA.

a direct result of appellant's failure to exhaust his rights under his uninsured motorist policy) would violate the very purpose of PIGA—"to avoid financial loss to ... policyholders as a result of the insolvency of an insurer ...". 40 Pa.S.A. § 1701.-102(1). Protection of appellees from financial loss can only be accomplished by barring appellant's right of recovery against them. In so ruling, we emphasize that *it was appellant's own decision to settle his uninsured claim for less than the policy limits* which coincidentally would have fully covered his damages.

In sum, we explicitly hold that a claimant's settlement of his uninsured motorist claim for less than the policy limits is a failure to exhaust his rights under that policy, thus, barring recovery of a claim from the Pennsylvania Insurance Guaranty Association or the tortfeasor to the extent that the claim is less that PIGA's statutory liability cap. Since appellant failed to exhaust his rights under his uninsured policy, he is barred from collecting any of his $200,000.00 jury award from either PIGA or appellees. Accordingly, we affirm the decision of the court below.[5]

Judgment affirmed.

5. Although instantly appellant's damages were less than PIGA's statutory limit of liability, we note that if his damage award had been in excess of the $300,000.00 cap, then he could have collected directly from appellees the amount which exceeded the statutory cap. Such a ruling would promote the common law rule that the tortfeasor is liable for the full extent of damage caused by his negligence, while at the same time insuring that the public policy underlying PIGA is enforced.