**Panea v. Isdaner**

*Slade H. McLaughin,* for plaintiffs.
*George L. Young Jr.,* for defendant Isdaner.
*Kenwyn M. Dougherty,* for defendant Jeans Hospital.

BERNSTEIN, *J.,* January 6, 1999—Plaintiffs Doina and John Panea filed this medical malpractice action against defendants Neil Isdaner M.D. and Neil Isdaner M.D. P.C. in November 1995. On December 11, 1997, the parties agreed to settle this case for $75,000. Plaintiffs' counsel sent an executed release and an order to settle, discontinue and end, to defense counsel on December 31, 1997. At the time of settlement, both defendants were insured by Physicians Insurance Company (PIC). On January 21, 1998, the Commonwealth Court ordered PIC into liquidation.

Plaintiffs' counsel sent a letter to the Pennsylvania Insurance Guaranty Association (PIGA) requesting payment of $75,000. PIGA tendered the sum of $50,000 to plaintiffs, claiming that it is entitled to a $25,000 credit pursuant to the Pennsylvania Property and Casualty Insurance Act.[1] Plaintiffs assert that they are entitled to recover an additional $25,000 from either PIGA or defendants personally. Defendants assert that neither PIGA nor the named defendants are liable for the full $75,000.

On September 24, 1998, plaintiffs filed a petition to enforce settlement against defendants, seeking an

_____

1. 40 P.S. §991.1801 et seq.

order of judgment against defendants in the amount of $25,000 plus accrued interest. This court denied plaintiffs' petition on November 3, 1998. From this order, plaintiffs timely appealed.

The sole issue on appeal is whether plaintiffs' health insurance payment of $25,000 bars them from further recovery against either PIGA or defendants personally. For the following reasons, this court's denial of plaintiffs' petition was proper and should be affirmed.

PIGA exists under the Pennsylvania Property and Casualty Insurance Guaranty Act (the PIGA statute).[2] The legislature's enactment of the PIGA statute on December 12, 1994 repealed former 40 P.S. §1701.101 et seq.[3] The purpose of the PIGA statute is "[t]o provide a means for the payment of covered claims under certain . . . casualty insurance policies . . . and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." [4] The legislature created PIGA to protect the claimants of insolvent insurers who have no other source of insurance from which to recover their losses.[5]

When it enacted the new PIGA statute, the legislature made significant changes in the former statute's non-duplication of recovery provision. Both statutes require a claimant to first exhaust his rights under any other insurance policy before requesting payment from PIGA. Under both statutes, PIGA is entitled to a credit equal to the amount that the claimant recovers under any other insurance. The specific change in the PIGA statute

---

2. 40 P.S. §991.1803.

3. The new PIGA statute became effective on February 10, 1995, 60 days after its enactment. See 40 P.S. §991.1801(1).

4. 40 P.S. §991.1801(1).

5. *Burke v. Valley Lines Inc.,* 421 Pa. Super. 362, 368, 617 A.2d 1335, 1338 (1992).

which is at issue in this case is the type of other recovery that entitles PIGA to an offset. The former statute provided:

"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such a policy. Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under such insurance policy." [6]

The Superior Court limited the application of this provision to the recovery of insurance benefits from a "covered claim." [7] In *Sands v. Pennsylvania Insurance Guaranty Association,* the Superior Court held that payments by an insurance carrier which did not result from the insolvency of an insurer were not subject to an offset.[8] The Superior Court stated:

"A 'claim against an insurer' would 'also be a covered claim' only if that claim was for an 'unpaid claim' arising under an insurance policy of an 'insolvent insurer.' Any claim Sands might have had against Hawkeye under a liability policy could not have also been a covered claim because it would not be a claim for an unpaid claim resulting from the insolvency of an insurer but from the negligence of Davis." [9]

In 1983, the Superior Court in *Bullock v Pariser* explained its prior interpretation of section 1701.503(a) by stating that "the second sentence of section 503(a)

---

6. 40 P.S. §1701.503(a) (repealed December 12, 1994).

7. In the former statute, a "covered claim" was defined as "an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer . . . ." 40 P.S. §1701.103(5)(a) (repealed December 12, 1994).

8. 283 Pa. Super. 217, 224, 423 A.2d 1224, 1227 (1980).

9. *Id.*

. . . refers back to any recovery on a claim of the sort referred to in the first sentence of section 503(a), *i.e.,* any 'covered claim.' " [10] In both *Sands* and *Bullock,* PIGA was not entitled to an offset because the claimant's other insurance recovery was not a "covered claim."

In response, the legislature abandoned this interpretation of the PIGA statute by repealing 40 P.S. §1701.-503(a) and replacing it with 40 P.S. §991.1817(a). The legislature remedied the ambiguity in the former statute by clearly defining the types of other insurance that would entitle PIGA to a credit. The new PIGA statute provides:

"Any person having a claim under an insurance policy shall be required to exhaust first his right under such policy. For purposes of this section, a claim under an insurance policy shall include a claim under *any kind of insurance,* whether it is a first-party or third-party claim, and *shall include, without limitation, accident and health insurance, workers' compensation, Blue Cross and Blue Shield and all other coverages except for policies of an insolvent insurer. Any amount payable on a covered claim under this Act shall be reduced by the amount of any recovery under other insurance."* [11]

The new PIGA statute specifically includes health insurance in its definition of "a claim under an insurance policy." [12] Thus, the unambiguous language of the new

10. 311 Pa. Super. 487, 494, 457 A.2d 1287, 1290 (1983).

11. 40 P.S. §991.1817(a). (emphasis added)

12. Plaintiffs admit that "[t]he present version of the statute clearly applies to health insurance benefits received by the plaintiff even if the receipt of such benefits did not result from the insolvency of any insurer." Memorandum of law in support of plaintiffs' petition to enforce settlement against defendants Neil Isdaner M.D. and Neil Isdaner P.C., p. 6.

PIGA statute precludes plaintiffs from recovering against PIGA the sum paid by their health insurance.

Plaintiffs argue, however, that the new PIGA statute cannot be applied to a cause of action that accrued prior to its effective date because the statute relates to substantive rights.[13] The new PIGA statute clearly applies to an unpaid claim against an insurer that is declared insolvent *"after the effective date of this article by a court of competent jurisdiction."* [14] PIC was declared insolvent by the Commonwealth Court on January 21, 1998, nearly three years after the new PIGA statute's effective date of February 10, 1995. Since defendants' insurance carrier was declared insolvent after that effective date, the new PIGA statute is applicable.

In *Blackwell v. Pennsylvania Insurance Guaranty Association,* a remarkably similar case, the Superior Court held that all sums paid to the claimant by her own underinsured motorist carrier must be deducted from any sums paid by PIGA.[15] Interpreting the nonduplication of recovery provision in light of the policies and intent of the statute, the court stated:

"[T]he legislature did *not* intend, in enacting the Insurance Guaranty Act, that in all cases a claimant would be placed in the *same* position he would have been in had the insurance company remained solvent. Even with the existence of PIGA, it was anticipated by the legislature that some claimants would suffer some

---

13. Memorandum of law in support of plaintiffs' petition to enforce settlement against defendants Neil Isdaner M.D. and Neil Isdaner P.C., pp. 6-7.

14. 40 P.S. §991.1802.

15. 390 Pa. Super. 31, 38, 567 A.2d 1103, 1107 (1989).

amount of financial loss due to the insolvency of an insurer . . . ." [16]

As the Superior Court recognized in *Blackwell,* the PIGA statute does not guarantee that plaintiffs in this case will be placed in the same position they would have been in had PIC remained solvent. Since the new PIGA statute applies and plaintiffs have received the sum of $25,000 from their health insurance carrier, they may not also recover that sum from PIGA.

Alternatively, plaintiffs claim that if PIGA is not liable for the full amount of the settlement, then defendants are personally liable in the amount of $25,000. In *Burke v. Valley Lines Inc.,* the Superior Court recognized that to impose such financial loss directly on the insured tort-feasor "would violate the very purpose of PIGA . . . ." [17] In *Burke,* the plaintiff brought a personal injury action against the tort-feasor and his employer after he had settled his uninsured motorist claim for less than the policy limits. Following trial, the plaintiff sought to recover the difference between the jury award and the payment from his uninsured motorist carrier from the defendants personally. In holding that the plaintiff was barred from recovering against either PIGA or the defendants, the Superior Court stated:

"Given PIGA's release from all financial responsibility as a direct result of appellant's failure to exhaust

---

16. *Id.* at 37, 567 A.2d at 1106. (emphasis in original) Although *Blackwell* was decided when the former statute was in effect, its holding still applies in this case. Despite the substantive differences between the two PIGA statutes, the stated purpose of each statute is the same—"to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." See 40 P.S. §991.1801(1); 40 P.S. §1701.102(1) (repealed December 12, 1994).

17. 421 Pa. Super. 362, 370, 617 A.2d 1335, 1339 (1992) (citing 40 P.S. §1701.102(1)).

his uninsured policy rights, we hold that appellant is likewise barred from recovering from appellees. Any other holding would render the 'exhaustion' provision of the Insurance Guaranty Act meaningless. . . .

"If appellees were now personally responsible for appellant's damages award they would be without any source of insurance protection to bridge the gap between appellant's uninsured motorist settlement of $85,000 and the $200,000 award." [18]

Therefore, since plaintiffs herein are barred from recovering against PIGA, they are likewise barred from recovering against the insured tort-feasors.

Accordingly, based on the PIGA statute's unambiguous language and controlling precedent, neither PIGA nor the named defendants are liable to plaintiffs for the sum paid by plaintiffs' heath insurance. For the foregoing reasons, this court properly denied plaintiffs' petition to enforce settlement against defendants, and its ruling should be affirmed.[19]

---

18. *Id.* at 369, 617 A.2d at 1338-39. See also, *White v. Accardo,* 15 D.&C.3d 609, 617 (C.P. Phila. County 1980) (holding plaintiff barred from recovering against named defendants where PIGA was released from all financial responsibility due to plaintiff's failure to exhaust policy rights).

19. Clearly, the understanding of the parties in reaching the settlement agreed upon before PIC's insolvency no longer exists. At that time, the parties contemplated payment in the amount of $75,000 without reduction for collateral source benefits. Defendants agreed to this settlement with the understanding that all sums would be paid by their insurance carrier. These understandings have been obliterated by the insolvency. Obviously, the settlement can be ruled null and void and the underlying matter restored to the trial list. No such request is before the court. In ruling on the instant petition, the court notes that plaintiffs have not requested any declaration that the settlement is null and void nor that the case be ordered for trial.