232 N.J. Super. 243 (1989)
556 A.2d 1267
GEORGE HENDRICKS AND MARGARET E. HENDRICKS, PLAINTIFFS-APPELLANTS, CROSS-RESPONDENTS,
v.
A.J. ROSS COMPANY, DEFENDANT-RESPONDENT, CROSS-APPELLANT, AND J.C. TRUCKING CO., JOHN CORDANO, INDIVIDUALLY, AND JOHN DOE (A FICTITIOUS NAME), JOINTLY AND SEVERALLY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1989.
Decided April 14, 1989.
*244 Before Judges KING, BRODY and SKILLMAN.
Lawrence P. De Bello argued the cause for appellants-cross-respondents.
Donald M. Garson argued the cause for respondent-cross-appellant (Buttafuoco, Karpf & Arce, attorneys; Donald M. Garson, on the briefs).
The opinion of the court was delivered by SKILLMAN, J.A.D.
*245 Plaintiff George Hendricks was injured during the course of his employment with Bellezza Construction Company. An action was filed by Hendricks and his wife Margaret E. Hendricks per quod against defendants, J.C. Trucking Company, John Cordano and A.J. Ross Company (Ross). On December 10, 1987, a jury returned a total verdict of $65,000 in favor of the plaintiffs against Ross and Cordano.[1] In addition, plaintiffs were awarded $13,000 in prejudgment interest.
Defendants' attorney sent a letter to the court dated December 19, 1987, urging that plaintiffs should not be awarded prejudgment interest because their insurer, Midland Insurance Company (Midland), was insolvent and liability for the judgment was the responsibility of the New Jersey Property Liability Insurance Guaranty Association (the Association). Defendants argued that N.J.S.A. 17:30A-5(d) precludes the imposition of any obligation for prejudgment interest upon the Association.
The trial court rejected defendants' argument by a letter dated January 11, 1988. Accordingly, the court entered judgment awarding prejudgment interest in favor of plaintiffs.
Defendants then made a motion for reconsideration of the part of the judgment awarding prejudgment interest. The trial court concluded by oral opinion delivered on February 5, 1988 that neither the Association nor the defendants were responsible for prejudgment interest. Thus, plaintiffs could only recover that part of the judgment from Midland's receiver. Accordingly, the court entered an order on February 29, 1988, providing that prejudgment interest "shall not be paid by" the Association or the defendants personally. Plaintiffs have appealed from this order.
*246 On March 21, 1988, defendants filed a motion seeking a credit pursuant to N.J.S.A. 17:30A-5(d) in the amount of any workers' compensation benefits which George Hendricks received for the injuries suffered in the accident.[2] By opinion delivered on May 3, 1988, the trial court denied defendant's motion on the grounds that it had not been filed in a timely manner. The court also stated that even if the motion had been timely, defendants would not be entitled to a credit for any workers' compensation benefits paid to Hendricks. An order memorializing the denial of this motion was entered on May 17, 1988. Ross has appealed from this order.
We consolidated plaintiffs' and Ross' appeals on our own motion. We now affirm.

I
The responsibility of the Association for payment of claims for insurance policies written by an insolvent carrier is limited to "covered claims." N.J.S.A. 17:30A-5(d) provides in pertinent part that "[a] `covered claim' shall not include amounts for interest on unliquidated claims." The trial court held that prejudgment interest on a tort claim constituted "interest on [an] unliquidated claim" and that the Association was therefore not responsible for the payment of prejudgment interest.
The usual understanding is that a tort claim, at least one seeking damages for pain and suffering, is unliquidated. See Busik v. Levine, 63 N.J. 351, 356-357 (1973), appeal dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). Indeed, in authorizing the award of prejudgment interest on tort claims through the adoption of R. 4:42-11(b), the Supreme Court recognized that the award of prejudgment interest had been *247 limited theretofore to liquidated claims and that tort claims were unliquidated. Id. at 358-359. Therefore, when the Legislature enacted the New Jersey Property-Liability Insurance Guaranty Act in 1974, N.J.S.A. 17:30A-1 et seq., and excluded "interest on unliquidated claims" from "covered claims," it undoubtedly had in mind prejudgment interest on tort claims which the Supreme Court had authorized in 1971 through the adoption of R. 4:42-11(b). Consequently, we agree with the trial court's conclusion that plaintiff's claim remained unliquidated until the jury returned a verdict and that any prejudgment interest accruing while the claim was unliquidated would constitute "interest on an unliquidated claim."
We also agree with the trial court's further conclusion that a party insured by an insolvent carrier is not responsible for the payment of prejudgment interest when the Association is exempt from that responsibility. N.J.S.A. 17:30A-5(d) states in pertinent part:
"Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided, that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association, would be a "covered claim," may be filed directly with the receiver of the insolvent insurer, but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer. (Emphasis added).
The underscored clause in N.J.S.A. 17:30A-5(d) appears prior to the exclusion from "covered claims" of "interest on unliquidated claims." Nevertheless, we believe that this clause reflects a general legislative policy to avoid imposition of liability upon an insured for claims which may not be pursued against the Association. Moreover, even if N.J.S.A. 17:30A-5(d) did not mandate that an individual insured not be held responsible for prejudgment interest due to its insurer's insolvency, it would be appropriate under the circumstances for the court to exercise its power under R. 4:42-11(b) to suspend the running of prejudgment *248 interest. See Busik v. Levine, supra, 63 N.J. at 384 (Conford, J., dissenting).

II
Ross contends that to the extent workers' compensation benefits were paid to Mr. Hendricks, the workers' compensation insurance carrier has a "subrogation" claim with respect to Mr. Hendrick's recovery against defendants and that this part of his recovery is therefore not a "covered claim." The trial court rejected this contention on the ground that it had not been raised in a timely manner.
Ross argues that its motion for a credit for any compensation benefits paid to Hendricks was timely filed pursuant to R. 4:50-1(a), (d) and (f). These rules provide:
[T]he court may relieve a party or his legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; ... (d) the judgment or order is void; ... (f) any other reason justifying relief from the operation of the judgment or order.
In Baumann v. Marinaro, 95 N.J. 380, 393 (1984), the Court stated that "Rule 4:50-1 provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." Ross has not demonstrated such exceptional circumstances in this case.
Ross fails to provide any explanation for its failure to assert a credit for workers' compensation benefits earlier in the litigation. It does not suggest, for example, that it was unaware that Mr. Hendricks had received workers' compensation benefits or that it was unable to ascertain that information in the exercise of due diligence. Rather, Ross's argument seems to be that because its claimed right to the credit for compensation benefits is statutory in origin, it may be asserted at any time.
We are satisfied, however, that even if Ross were entitled to the credit it claims, a judgment which omitted that credit would not be "void" within the meaning of R. 4:50-1(d). See In re Whitney-Forbes, Inc., 770 F.2d 692, 696 (7th Cir.1985) ("Even gross errors committed by a court in reaching a decision do not *249 render the court's judgment or order void."); see also 11 Wright & Miller, Federal Practice & Procedure, § 2862 at 198 (1973) ("A judgment is not void merely because it is erroneous."). And counsel's failure to assert this claim earlier in the litigation is not the kind of "mistake" for which a litigant is entitled to relief under R. 4:50-1(a). See Baumann v. Marinaro, supra.
Finally, we note that plaintiffs received the principal amount of the judgment awarded them before Ross asserted its claim to a credit for workers' compensation benefits. Thus, the grant of relief to Ross would impose a hardship on plaintiffs by forcing them to return money which they have already received and very well may have expended.
Consequently, the trial court properly concluded that Ross' claim could not be raised by a motion under R. 4:50 and was untimely.[3]
Affirmed.
NOTES
[1] The record does not indicate the disposition of plaintiffs' claim against J.C. Trucking Company.
[2] The record does not indicate why this motion and the subsequent appeal from its denial were filed solely on behalf of Ross and not also on behalf of Cordano.
[3] Therefore, we have no occasion to consider the merits of Ross' claim and our opinion should not be construed to reflect any view concerning the holding in Arnone v. Murphy, 153 N.J. Super. 584 (Law Div. 1977).