liWALTZER, Judge.

I. STATEMENT OF THE CASE

This court previously visited this case in Gygax v. Brugoto, 90-0003 (La.App. 4 Cir. 11/30/94), 646 So.2d 1236 writ denied 95-0396 (La. 4/21/95) 653 So.2d 565 writ granted and remanded 95-0399 (La. 4/21/95) 653 So.2d 565 writ denied 95-0403 (La. 4/21/95) 654 So.2d 319.
In the instant case, plaintiff Carl L. Gygax was injured on August 29, 1988 while employed as a mechanic with Arabi Service Station. Suit was filed on August 19, 1989 against his employer Gary Brugoto d/b/a Ar-abi Service Station, the property owner Jean Mae Trebucq Leon and her insurer Pelican State Mutual Insurance Company (hereinafter “Pelican”). Casualty Reciprocal Exchange filed an intervention for workers compensation payments paid to Gygax. The intervention claim was severed. Trial was held on March 11 and 12. The jury returned a verdict favorable to the plaintiff on March 12 and the judgment was signed on May 3, 1993 casting Mrs. Leon and Pelican for a total award on $251,912.20 plus costs and legal interest from date of judicial demand.
Leon and Pelican filed a suspensive appeal. After the original briefs were filed, Pelican was placed in liquidation by the Commissioner of Insurance and deemed an insolvent insurer on February 26, 1993. LIGA was then added as Pelican’s legal successor in liquidation and filed a reply brief raising new defenses arising out of LIGA law. The Fourth Circuit affirmed the jury’s verdict, but did |2not address the LIGA issues. The Supreme Court denied one writ and granted another, remanding to the Fourth Circuit, which in turn remanded to the trial court.
On April 28, 1995 LIGA made an unconditional tender of its statutory limit of $149,-900.00 into the registry of the court, which plaintiff accepted and withdrew. On June 14, 1995, Leon deposited the difference between the statutory cap and the verdict or the “excess” of $102,012.50 into the registry of the court. Thus both defendants cut off interest from the date of tender into the registry forward.

*368
A. JUDGMENT ON APPEAL

The trial court rendered its judgment on July 17, 1995, relying on the Supreme Court’s original decision in Prejean v. Dixie Lloyds Ins. Co., 94-2979 (La. 5/22/95) 655 So.2d 303 opinion modified on rehearing 94-2979 (La. 9/15/95) 660 So.2d 836 which held LIGA liable for pre-insolvency court costs:
This matter came before the Court on June 30, 1995 for hearing. The Fourth Circuit Court of Appeal remanded the matter to this Court for a determination of whether the Louisiana Insurance Guaranty Association is liable for pre-insolvency court costs and interest. The Court has carefully considered the memoranda and argument of counsel in reaching its decision.
The recent Louisiana Supreme Court case, Prejean v. Dixie Lloyds Insurance Co., 94-CA-2979 [655 So.2d 303] (May 22, 1995), is applicable to this matter. In that case, the Court found that LIGA was responsible for pre-insolvency court costs.
Therefore, it is this Court’s opinion that the Prejean case along with Richard v. Teague 636 So.2d 1160 (La.App. 3 Cir.1994), Gautro v. Fidelity Fire & Casualty Ins. Co., 623 So.2d 106 (La.App. 1 Cir.1993), and Morris v. Stewart, 617 So.2d 978 (La.App. 4 Cir.1993) are controlling here. Thus, LIGA must pay all interest and court costs awarded in this matter whether incurred pre-insolvency or post-insolvency.
13After the trial court rendered judgment in the instant case, on September 15, 1995, the Supreme Court on rehearing in Prejean found LIGA not liable for pre-insolvency court costs in the Prejean case.

B. ISSUES ON APPEAL

In the instant case, the principal amount has been paid through the tender into the registry and interest from the date of tender forward has been cut off by the tenders. Thus still at issue is over $137,000.00 in pre-insolvency and post-insolvency but pre-ten-der interest and all costs.
On appeal, LIGA argues that in light of the Supreme Court’s new opinion on rehearing in Prejean, it is not liable for pre-insol-vency interest and it is further not liable for post-insolvency interest in excess of its cap of $149,900.00. Under LIGA’s argument, as a principle of law any excess over the cap is payable by the co-defendants in solido. The wrinkle in the instant case is that the only co-defendant in solido is LIGA’s insured.
In order to understand the instant case, a discussion of the Prejean ease is in order.

II. PREJEAN

On September 4, 1989 guest passengers Billy Deshotel and Patricia Prejean sustained injuries in an auto accident while riding in a vehicle owned by Monica Montet and driven by Scott Richard. The Montet vehicle was insured by Dixie Lloyds and Liberty Lloyds insured the driver Scott Richard and was Deshotel’s uninsured/underinsured motorist insurer.
Deshotel sued Monica , Montet, Dixie Lloyds, Scott Richard and Liberty Lloyds on April 24,1990. The suit was later consolidated with two other suits arising from the same accident.
|4On December 20, 1990 Dixie Lloyds was declared insolvent and ordered into liquidation by the Insurance Commissioner. “As the successor to Dixie Lloyds, LIGA was substituted as the proper party defendant ...” [At p. 2, 305]. [Emphasis supplied]. Deshotel settled with Liberty Lloyds and after trial obtained a judgment against LIGA/Dixie Lloyds as the insurer of the Montet vehicle. The trial court equally divided court costs between LIGA/Dixie Lloyds and Liberty Lloyds.
LIGA appealed claiming the trial court erred in casting it with court costs incurred prior to Dixie Lloyd’s insolvency, i.e. “prein-solvency” costs. The Court of Appeal retroactively applied LSA-R.S. 22:1379(3)(d) effective September 7, 1990 to exempt LIGA from the payment of preinsolvency court costs of an insurer. The Court of Appeal assessed all of the preinsolvency court costs against the still solvent insurer Liberty Lloyds and all of the postinsolvency court costs against LIGA, including the costs of appeal. Pursuant to the Court of Appeal’s *369 order the Vermilion[1] Parish Clerk of Court determined LIGA/Dixie Lloyds had an outstanding balance of $354.28 and Liberty Lloyds had an outstanding balance of $1,800.54. LIGA/Dixie Lloyds paid its outstanding court costs; Liberty Lloyds did not. Deshotel advanced Liberty Lloyds court costs.
On May 17, 1993 Liberty Lloyds was declared insolvent by the Insurance Commissioner and placed into liquidation. Deshotel filed a Rule to Show Cause against LIGA, as Liberty Lloyds successor in liquidation, requesting that the court order LIGA/Liberty Lloyds to pay the outstanding court costs owed by Liberty Lloyds.[2] The trial court ruled in Deshotel’s favor holding unconstitutional Act | ¡¡651 of 1993 [3] (the LIGA court costs exemption in judicial proceedings by or against LIGA) and Act 958 of 1993[4] (the *370 LIGA court costs exemption and ^discretion of the trial court to award costs against LIGA to a successful party). The declaration of uneonstitutionality triggered a direct appeal to the Supreme Court.
The Supreme Court noted that “(u)nder this provision, the state and state agencies are ‘exempt from the prepayment of court costs’ or have been given a ‘temporary deferment’ from the payment of court costs until a final judgment is rendered” citing Louisiana Insurance Guaranty Association v. Gegenheimer, 93-3021, p. 3 (La. 4/21/94), 636 So.2d 209, 210. The court further found under Gegenheimer, supra at p. 5, 210-211, the legitimate state purpose served is:
Because LIGA is involved in so much litigation, the legislature determined that LIGA’s prepayment of court costs would be an unnecessary financial burden. Deferring court costs serves to protect LIGA’s solvency, an appropriate state interest. See Segura v. Frank, 93-1271, 630 So.2d 714 (La.1994). The deferment places a financial burden on Louisiana’s clerks of court, but the legislature determined that the state’s interest justifies that burden. Moreover, LIGA’s costs are only deferred or postponed until the litigation is concluded. The legislative decision that deferring LIGA’s court costs furthers the state’s interests in protecting policyholders and claimants of insolvent insurers is not constitutionally deficient. [Emphasis added].
The Supreme Court then examined the issue of whether LSA-R.S. 22:1379(3)(d), i.e. Act 105 of 1990[5], effective September 7, 1990, excused LIGA |7from paying preinsol-vency ' court costs incurred by Liberty Lloyds. The court stated that prior to this act “there was no statutory provision limiting LIGA’s exposure for court costs. Instead, LIGA was responsible for paying all court costs attributable to the insolvent insurer, without regard to whether they were incurred pre- or postinsolvency (sic) (citations omitted).” [At p. 6, 307]. The Court then recited the general rule that prospective application applies to laws that are substantive in nature, while laws that are procedural may be applied retroactively. The court concluded that the act was substantive[6] and could only be applied prospectively. Thus, the Supreme Court in Prejean originally found LIGA responsible for all court costs stating:
As previously explained, prior to the 1990 amendment, a litigant had a right to collect from LIGA all court costs incurred. Under the amended statute, this right no longer exists, and litigants are relegated to recovering only postinsolvency court costs from LIGA. Accordingly, we find that La.R.S. 22:1379(3)(d) clearly effected a change in existing rights. Therefore, it must be categorized as substantive, and *371 applied prospectively only. LIGA is responsible for all court costs ... whether they arose prior to or after the determination of insolvency. [At 8, 308]. [Emphasis supplied].
I gill. PRE JEAN ON REHEARING
On rehearing, however, the Supreme Court noted that plaintiff was injured on September 4, 1989 when LIGA was liable for all pre- and post-insolvency court costs. Act No. 105 of 1990 absolving LIGA of responsibility for pre-insolvency court costs and interest was effective September 7, 1990. Liberty Lloyds, the second insolvent insurer in Prejean, was declared insolvent on May 17, 1993. The Court then found that the law in effect on the date of the insurer’s insolvency, rather than the law in effect on the date of the accident governs LIGA’s obligation to pay court costs. The Court stated:
The determinative point in time separating prospective from retroactive application of an enactment is the date the “cause of action”[7] accrues, (citations omitted). In Louisiana, a cause of action accrues when a party has a right to sue. (citations omitted).
Applying these principles, Deshotel acquired the right to sue Liberty Lloyds, but not LIGA, on the date of the accident, September 4, 1989. Deshotel’s cause of action against LIGA did not exist until Liberty Lloyds was declared insolvent, on May 17,1993.
Accordingly, we find that LIGA’s obligation to pay court costs is governed by the law in effect on the date that the insurer is declared insolvent, not by the law in effect on the date of the event giving rise to the insurer’s liability.
RThe court then concluded that since the declaration of insolvency and substitution of LIGA occurred after the effective date of Act No. 105 of 1990, LSA-R.S. 22:1379(3)(d) was only being applied prospectively.

IV. DISCUSSION

In the interest of judicial economy, we will examine the issue of the cap first. LSA-R.S. 22:1382(A.)(l)(a) creates a cap of $149,900.00 for LIGA. The Statute specifically says:
The association shall ... be obligated to the extent of the covered claims [8] existing prior to the determination of the insurer’s insolvency, ... but such obligation shall include only that amount of each covered claim ... which is in excess of one hundred dollars and is less than one hundred fifty thousand dollars, per claim, subject to a maximum limit of three hundred thou *372 sand dollars per accident or occurrence
[[Image here]]
The applicable limit per claim and per accident or occurrence shall be exhaustive of the entire liability of the association under this Part, however arising, without regard to the nature of or basis for that liability, except court costs incurred subsequent to the date of insolvency.
It is apparent from both a reading of Pre-jean on rehearing and from a simple reading of the statute that LIGA is liable for the $149,900.00 cap plus post-insolvency court costs. In the instant case, LIGA is liable for the cap of $149,900.00 plus court costs from February 26, 1993. Under Prejean on rehearing, LIGA is not liable for the pre-Feb-ruary 26,1993 court costs and interest.
We further note that the statute specifically provides for a cap of $149,900.00 plus court costs. The legislature could have easily said “plus interest and court costs” but it failed to do so.
| ipAccordingly we find that LIGA is liable for the cap of $149,900.00 plus court costs from February 26, 1993, the date of Pelican’s insolvency.
For the reasons discussed,
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff Carl L. Gygax against the defendants, Jean Mae Trebucq Leon and the Louisiana Insurance and Guaranty Association in the sum of $251,912.20, provided, however, that the Louisiana Insurance and Guaranty Association’s liability is limited to the statutory cap of $149,900.00, plus court costs from February 26, 1993.

REVERSED AND RENDERED.

. Vermilion Parish is spelled with one “1”.

. Deshotel sought to be reimbursed for these court costs which he had advanced.

. Act 651 of 1993 reads as follows:
A. Except as provided in R.S. 13:5112, R.S. 19:15 and 116, and R.S. 48:451.3, and as hereinafter provided, neither the state, nor any parish, municipality, or other political subdivision, public board, or commission, or any employee of the city of New Orleans when acting within the scope and authority of such employment shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state, or any such parish, municipality, or other political subdivision, board, or commission, in any court of this state or any municipality of this state, including particularly but not exclusively those courts in the parish of Orleans and the city of New Orleans. This Section shall also apply to the Louisiana Insurance Guaranty Association ... in any judicial proceeding instituted by or against them ... Costs which are temporarily deferred pursuant to this Section cannot be shifted to opposing parties during the pen-dency of such deferment.

. Act No. 958 of 1993 provides as follows:
A. Except as provided in R.S. 13:5112, R.S. 19:15 and 116, and R.S. 48:451.3, and as hereinafter provided, neither the state, nor any parish, municipality, nor other political subdivision, public board, or commission, nor any officer or employee of any such governmental entity when acting within the scope and authority of such employment or when discharging his official duties shall be required to pay court costs in any judicial proceeding instituted or prosecuted by or against the state, or any such parish, municipality, or other political subdivision, board, or commission, in any court of this state or any municipality of this state, including particularly but not exclusively those courts in the parish of Orleans and the city of New Orleans. This Section shall also apply to the Louisiana Insurance Guaranty Association in any judicial proceeding instituted by or against it. This Section shall also apply to employees or agents of the state if they are named as defendants in a suit arising out of the course and scope of their employment or agency. Costs which are temporarily deferred pursuant to this Section cannot be shifted to opposing parties during the pendency of such deferment.
B. It shall be the duty of the exempted entities set forth above to assist in the collection of court costs due by the opposing litigants by requesting the court in question to tax costs in accordance with the provisions of Article 1920 of the Code of Civil Procedure. In this regard the entities are authorized to and shall withhold any court costs due by the opposing litigants, from any settlement payment to the said parties, and shall forward said costs to the clerk of court.
5112. Suits against the state of political subdivision; court costs; interest
A. In any suit against the state or any department, board, commission, agency or political subdivision thereof, the trial or appellate court, after taking into account any equitable consideration as it would under Article 1920 or Article 2164 of the Code of Civil Procedure, as applicable, may grant in favor of the successful party and against the state, department, board, commission, agency, or political subdivision against which judgment is rendered, an award of such successful party's court costs under R.S. 13:4533 and other applicable law as the court deems proper but, if awarded, shall express such costs in a dollar amount in a judgment of the trial court or decree of the appellate court.
B. In accordance with Section 10 of Article XII of the Constitution of Louisiana, neither the state nor any department, board, commission, agency, or political subdivision thereof shall be required to pay any such award of court costs, pursuant to this Section, until the judgment rendered against the state, department, board, commission, agency, or political subdivision shall become final and definitive under the provisions of Articles 2166 and 2167 of the Code of Civil Procedure or otherwise nonappealable or nonreviewable beyond the delays set by law for same and the funds have been appropriated therefor in specific dollar amount. In the parish of Jefferson, the provisions of this Section shall not exempt the state or any department, board, commission, agency, or political subdivision thereof, other than *370 the parish governing authority of Jefferson Parish which shall be so exempt, from paying any conveyance or mortgage recordation fees ordinarily and customarily charged by the clerk of court.

. Act No. 105 of 1990 provides:
(3)(b) "Covered claim” shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise. In addition, the insured of an insolvent insurer shall likewise not be liable for any subrogation claim asserted by any reinsurer, insurer, insurance pool, or underwriting association to the extent of the applicable liability limits previously provided to such insured by the insolvent insurer. "Covered claim” shall not include any amount due under or arising from a bail bond contract.
(c) "Covered claim” shall not include any claim based on or arising from a pre-insolven-cy obligation of an insolvent insurer, including but not limited to contractual attorneys’ fees and expenses, statutory penalties and attorneys’ fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency.

. The Supreme Court further discussed the definition of "procedural” saying " ‘(p)roceduml' laws describe the method of enforcing, processing, administering or determining rights, liabilities or status. If a statute merely prescribes the method of enforcing a right which previously existed or maintains redress for invasion of rights, it is classified as procedural; whereas if it creates a new obligation or right where none previously existed it is substantive.” [Emphasis added].
This writer disagrees with the characterization of the statute as substantive. If a statute governing payment of court costs is not "describ(ing) the method of ... administering” the judicial process, i.e. “rights or liabilities”, then there are no procedural statutes in our law. If court costs are not procedural, then nothing is. I would *371 characterize the statute as procedural and thus capable of retroactive application.

. The court cites Cole v. Celotex, 599 So.2d 1058 (La.1992) for the definition of “cause of action”. Celotex dealt with asbestosis plaintiffs whose injuries developed slowly over time. The court was concerned with accrual of a cause of action over a long period of time. The court noted at footnote 15 "For a negligence cause of action to accrue, three elements are required: fault, causation and damages ... Thus a sine qua non for accrual of a cause of action is damages.” "Cause of action” is the accident or occurrence, but in asbestosis cases it is hard to determine because there is no one single accident or event at which the injury occurs, rather the injury develops slowly over time. The Celotex case is a question of when the plaintiffs suffered the damages, distinguishing it from the Prejean case wherein the guest passengers suffered their injuries in the automobile accident immediately. Hence in Prejean the cause of action accrued immediately. Likewise, in the Gygax case before us plaintiff suffered his injuries immediately upon his fall and the cause of action accrued immediately.
The use of "cause of action” in the Prejean case on rehearing is incorrect. "Cause of accident" is the accident or occurrence; "right of action" is the legal status of the right to sue or be sued. In concluding that Deshotel could not sue LIGA until Liberty Lloyds was declared insolvent, the court was not concluding that there was no accident, but rather that LIGA's legal status as successor in liquidation did not arise until insolvency. Thus the Supreme Court obviously meant right of action instead of cause of action.

. As previously mentioned, LSA-R.S. 22:1379(3)(d) limits the phrase "covered claim” stating "covered claim" shall not include any claim based or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractual attorneys’ fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expense incurred prior to the determination of insolvency.