843 A.2d 1198 (2003)
367 N.J. Super. 565
Debra A. FLAHERTY and Gary Flaherty, Her husband, Plaintiffs,
v.
Jeffrey SAFRAN, Defendant.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided July 2, 2003.
*1199 Cornelius W. Caruso, Jr., Rahway, for plaintiff (Tobin Koster Oleckna Reitman Greenstein & Konray, attorneys).
Christopher Carlson, for defendant (Mintzer Sarowitz Zeris Ledva & Meyers, attorneys).
O'HAGAN, ROBERT W., J.S.C.
May a plaintiff collect upon a judgment against an insured in his personal capacity for monies in excess of the statutory limits as set forth in the New Jersey Property-Liability Insurance Guaranty Association Act? See N.J.S.A. 17:30A-1 to -20. The question arises as Debra Flaherty obtained a judgment from a Monmouth County jury totaling $525,000.[1] The Academy Bus Company, the employer of defendant, Jeffrey Safran, purchased primary auto liability coverage with limits of $1,000,000 along with excess coverage to the extent of $5,000,000. Unfortunately, the primary carrier, the Reliance National Indemnity Company, was declared insolvent in 2001, more than three years after the accident involved here.
Plaintiffs maintain, in this circumstance, Safran is responsible for the difference between the monies to be paid by the Guaranty Fund and the verdict.
The court concludes, for reasons hereafter stated, Debra Flaherty may not collect any money from the defendant in his personal capacity. Rather, plaintiff's collection is limited to $300,000 plus post judgment interest since Safran is not personally responsible for the difference above the Guaranty Association's obligation. N.J.S.A. 17:30A-8(a)(1).
The issue is unique and, in some respects, close as there are competing concerns as well as policy reasons pulling in different directions. In a sense, the court is presented with two victims. That is to say, a defendant who took necessary and appropriate steps to secure adequate coverage only to find, through no fault of his own, that his carrier became insolvent; and, on the other hand, a plaintiff who has sustained injuries that the jury found to be very significant. Indeed, those injuries required that plaintiff submit to complex and difficult surgeries involving both her neck and back, in addition to a fairly simple knee surgery. Certainly no one can legitimately dispute the considerable pain, suffering, disability and impairment Debra Flaherty has endured as a result of the accident.
First a brief statement of the facts; On November 20, 1997, Debra Flaherty was stopped on Route 9 in Howell Township waiting for a traffic light to turn green. Behind her was another driver, not here involved, who was also stopped. Behind that following car was an Academy bus operated by defendant. Defendant acknowledged his foot slipped off the brake, causing the bus to lurch forward, striking the vehicle in front of him which in turn struck plaintiff's vehicle. Proofs established that none of the vehicles sustained any appreciable property damage. Nonetheless, plaintiff (convincingly) alleged she sustained serious injury. The bus was owned by Ellmas Bus Company, although Safran was employed by Academy Bus Company which ran the line. For reasons not pertinent here, Academy was not made a party to this lawsuit. Ellmas was a party, but was dismissed, again for reasons not here pertinent.
As earlier noted, Academy Bus Company purchased liability insurance for the *1200 bus with limits far exceeding plaintiff's judgment. After Reliance National Indemnity Company was declared insolvent in 2001, the Guaranty Association took over the defense of plaintiff's claim and has represented Safran thereafter continuing in that representation on this motion.
Clearly, neither Mrs. Flaherty nor Safran have any responsibility for the financial circumstances they now face. Obviously, the court's resolution of the issues will have significant consequences for each.
From plaintiff's perspective, she sustained injuries that the jury found to be very significant. There can be no question New Jersey's public policy favors payment of the legitimate claims of parties injured in accidents. Fellippello v. Allstate Ins. Co., 172 N.J.Super. 249, 261-62, 411 A.2d 1137, 1142-43 (App.Div.1979). Indeed, this policy is the bedrock supporting the concept of tort litigation in this state and throughout the nation.
On the other hand, defendant and his employer recognized their responsibilities, or better said obligation, and purchased liability insurance with significant limits. Clearly, the carrier's failure had nothing to do with defendants. In a practical sense, it would be difficult to conclude that any insured could possibly foresee a carrier's failure especially when the insolvency occurred some three plus years after the accident.
Recognizing the plight in this circumstance of the innocent accident victim, as well as those tortfeasors who have taken reasonable and appropriate steps to protect the motoring public, i.e., by purchasing liability insurance, the Legislature, in keeping with the national trend, adopted the "Guaranty Act."
In doing so, the Legislature declared the statute's purpose "is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, [and] to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." N.J.S.A.17:30A-2(a).
The Supreme Court has recognized this legislative purpose, beginning with Railroad Roofing & Bldg. Supply Co. v. Financial Fire & Cas. Co., 85 N.J. 384, 389, 427 A.2d 66, 68-69 (1981) (emphasis added), where it found, "The Guaranty Act was adopted in this State in 1974 in recognition of the need to provide some protection to policyholders of insurance companies which become insolvent." More recently the Supreme Court observed, "The Act was created to `avoid financial loss to claimants or policyholders because of the insolvency of insurance companies.' See Senate Bill Statement, S. 1004, c. 17 (April 11, 1974)." Carpenter Tech. Corp. v. Admiral Ins. Co., 172 N.J. 504, 514, 800 A.2d 54, 60 (2002).
The parties contend no court has yet been presented with the issue raised in this case. The court's independent research confirms this statement. Yet, the Appellate Division has resolved somewhat analogous circumstances which guide the court's resolution of the issue presented.
By its terms, the Act clearly absolves the Guaranty Association from any obligation to pay pre-judgment interest. N.J.S.A. 17:30A-5(d); Carpenter Tech. Corp., supra, 172 N.J. at 516, 800 A.2d at 61. However, no provision or comment is set forth in the Act regarding the defendant's personal responsibility to pay prejudgment interest. When that issue arose, the Appellate Division first, in Hendricks v. A.J. Ross Co., 232 N.J.Super. 243, 556 A.2d 1267 (App.Div.1989), and later in that same year, in Lehmann v. O'Brien, 240 N.J.Super. 242, 573 A.2d 171 (App.Div. 1989), ruled that the defendants would not be personally responsible for pre-judgment interest. In each case, the judgment returned *1201 in favor of the plaintiff was less than the statutory maximum.
Both the Hendricks court and the Lehmann court identified the policy or purpose supporting the Act to avoid imposition of liability upon an insured for claims which could not be pursued against the Association. Lehmann v. O'Brien, supra, 240 N.J.Super. at 248, 573 A.2d at 174; Hendricks v. A.J. Ross Co., supra, 232 N.J.Super. at 247, 556 A.2d at 1269-70.
However, earlier in 1989, another part of the Appellate Division, without explaining the statutory language in detail, determined, in this circumstance, the defendant in his individual personal capacity would be responsible for pre-judgment interest, except for during the 180-day time period in which the Guaranty Association was given to conduct its investigation. Wilton v. Cycle Trucking, Inc., 240 N.J.Super. 326, 328-329, 573 A.2d 462, 463 (App.Div.1989). That case has not been followed, nor was the court's rationale or reasoning as compelling as that set forth cogently in both the Hendricks and Lehmann cases.
Earlier the Law Division, in Sandson's Bakery v. Glover, 162 N.J.Super. 225, 226-227, 392 A.2d 640, 641 (Law Div.1978), ruled that the plaintiff's insurer, Allstate Insurance Company, could not exercise its rights of subrogation directly against the defendant Glover who was represented by the Guaranty Association since her carrier had been declared insolvent. The court found that N.J.S.A. 17:30A-5(d), as it was then formulated, did not specifically in its terms prohibit subrogation directly against the insured herself. Nonetheless, the court concluded such claim could not be maintained, as it would be violative of the statute's purpose to protect both policyholder and victim.
By its terms, the statute is to be interpreted liberally to effectuate its purpose. N.J.S.A. 17:30A-4(a).
As further evidence of the legislative purpose to protect policyholders, the statute now, as amended, prohibits any claim for subrogation against the insured himself. N.J.S.A. 17:30A-11. This legislative concern for innocent insureds is reflected in the definition of covered claims which include claims for reimbursement of unearned premiums. N.J.S.A. 17:30A-5(d).
It is clear the Legislature has made certain policy judgments which benefit but also affect both the innocent victim and the innocent insured. Thus, the injured victim was, to the limits of the insured coverage, provided a fund available for payment on account of pain, suffering, disability and impairment, etc., up to $300,000. On the other hand, an innocent insured who had paid insurance premiums was to be protected by the fund up to the limits of his elected coverage, provided same did not exceed $300,000.
Since under accepted case law, Safran is not responsible for pre-judgment interest, nor may a subrogation claim be pursued against him, it would be incongruent to compel defendant now to bear personal responsibility for the amount above the Guaranty Association's obligation, recognizing that the verdict, although significant, was still within the limits of coverage purchased by defendant's employer. Clearly, such a result would be violative of the statute's purpose.
Some, including plaintiff, might take issue with these binding policy decisions. Obviously, given the passage of time, since the limits were set, and recognizing significant increases in the cost of living, medical expenses and the like, some might seek to increase the limits available to be paid to a seriously injured plaintiff, such as Debra Flaherty. That, however, is not the court's responsibility.
Plaintiff argues that the circumstance now before the court is not unique as it is not unusual for defendants to be personally *1202 responsible for damage awards exceeding the limits of their liability coverage. Therefore, plaintiff argues, defendant should be personally responsible for the sums that exceed $300,000, exclusive of pre-judgment interest on that sum.
It is obvious that the circumstances here are entirely different, given the limits of coverage that the defendant's employer secured through a recognized carrier which, nonetheless, thereafter became insolvent. Indeed, if a judgment were to exceed the substantial amount of the primary policy, an excess policy was available. Impressed with the possibility that innocent, responsible insureds such as defendant might experience such dire financial consequence, the Legislature effected its compromise.
The court grants, for the reasons stated, defendant's application to cap the damages, as it concerns both the Guaranty Fund and defendant, at $300,000 plus post-judgment interest.
NOTES
[1] Gary Flaherty, Debra's husband, obtained a $15,000 judgment for his per quod claim.