869 A.2d 964 (2005)
376 N.J. Super. 215
Frederick JOHNSON and Margaret Ann Johnson, his wife, Plaintiffs-Respondents,
v.
Willie R. BRADDY, Braddy Trucking, and Walsh Trucking, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 2005.
Decided March 31, 2005.
*965 Leonard C. Leicht, Livingston, argued the cause for appellants (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Mr. Leicht, of counsel and on the brief; Mukti Patel, on the brief).
George T. Taite, Jersey City, argued the cause for respondents (De Luca & Taite, attorneys; Mr. Taite, of counsel and on the brief; Samuel R. De Luca, on the brief).
Before Judges SKILLMAN, PARRILLO and RIVA.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The New Jersey Property-Liability Insurance Guaranty Association Act, N.J.S.A. 17:30A-1 to -20 (Guaranty Act), establishes a Guaranty Association, funded by assessments on insurance companies, which is required to pay the obligations of insolvent insurance companies subject to a maximum of $300,000. The issue presented by this appeal is whether the holder of an insurance policy with an insolvent insurance company, with policy limits in excess of $300,000, is personally liable for any judgment in excess of the Association's $300,000 maximum liability. We conclude that in the absence of any statutory provision expressly exempting a policyholder from such liability, the Guaranty Act should be construed to afford an injured party the right to recover any damages in excess of the Association's maximum liability directly from the policyholder.
On May 7, 1999, as he was getting out of his tow truck on a street in Jersey City, plaintiff Frederick Johnson was hit by a truck owned and operated by defendant Willie Braddy. As a result of this accident, plaintiff suffered severe injuries, including trauma to his left leg that required amputation above the knee.
At the time of the accident, Braddy was an "owner-operator" performing trucking services for defendant Walsh Trucking, a large North Jersey trucking company. In accordance with Interstate Commerce Commission regulations, Walsh maintained an insurance policy issued by Reliance Insurance Company, with limits of $1,000,000, and an umbrella policy issued by AIG, with limits of $25,000,000,[1] which provided coverage to both Walsh and its drivers including Braddy.
Subsequent to plaintiff's accident, Reliance was declared insolvent and placed into liquidation.
Plaintiff filed this action in 2001. After being notified of Reliance's insolvency, the trial court entered a consent order that dismissed plaintiff's complaint, subject to restoration after disposition of plaintiff's claim for uninsured motorist benefits under *966 his own insurance policy. Plaintiff's insurer awarded him $300,000, which was the full amount of his uninsured motorist coverage, and his complaint against Braddy and Walsh was then reinstated.
Braddy and Walsh filed a motion for summary judgment seeking dismissal of plaintiff's complaint on the theory they could not be subject to personal liability for any damages in excess of the $300,000 maximum coverage provided by the Guaranty Association, which plaintiff had already recovered under his own policy.[2]
The trial court concluded in an oral opinion that the $300,000 statutory limit on recovery from the Association is solely "a limit on the amount of funds available to a plaintiff from the Association's coffers, not a limit on the total amount of damages a plaintiff may recover." The court reasoned that because New Jersey's public policy favors compensating victims of automobile accidents, any adverse financial consequences of insolvency of the tortfeasor's insurance company should be borne by the tortfeasor rather than the injured party. Therefore, the court denied defendants' motion.
We granted defendants' motion for leave to appeal because of the conflict between the trial court's decision in this case and the published opinion in Flaherty v. Safran, 367 N.J.Super. 565, 843 A.2d 1198 (Law Div.2003).
The essential objective of the Guaranty Act is "to minimize financial loss to claimants or policyholders because of the insolvency of an insurer." N.J.S.A. 17:30A-2(a). To achieve this objective, the Act establishes the Guaranty Association and requires all insurers who write insurance to which the Act applies, which includes all forms of motor vehicle coverage, see N.J.S.A. 17:30A-2(b), to be members, N.J.S.A. 17:30A-6, and authorizes the Association to collect assessments from members sufficient to pay covered claims of insolvent insurers, N.J.S.A. 17:30A-8(a)(3). See Carpenter Tech. Corp. v. Admiral Ins. Co., 172 N.J. 504, 508-09, 800 A.2d 54 (2002). This legislation "is patterned after a model bill prepared under the auspices of the National Association of Insurance Commissioners ... and thereafter adopted in varying forms by almost every state." R.R. Roofing & Bldg. Supply Co. v. Fin. Fire & Cas. Co., 85 N.J. 384, 391, 427 A.2d 66 (1981).
The Guaranty Association is liable for the limits of liability stated in the policy of the insolvent insurer, subject to a maximum of $300,000. N.J.S.A. 17:30A-8(a)(1). Thus, if a policyholder's coverage is less than $300,000, the Association's liability is limited to the amount of that coverage, but if the policyholder's coverage under the policy issued by the insolvent insurer is more than $300,000, the Association's liability is capped at $300,000.
The Guaranty Act does not explicitly address whether a policyholder remains personally liable for any damages in excess of the Association's $300,000 maximum liability. The question, therefore, is whether the Act reflects an implicit legislative intent to immunize a policyholder from liability for such damages.[3]
*967 The basic policy of our law is to allow an injured party to recover the full amount of his or her damages from the tortfeasor. See Patusco v. Prince Macaroni, Inc., 50 N.J. 365, 368, 235 A.2d 465 (1967). Thus, if a plaintiff's damages exceed the tortfeasor's insurance coverage, the tortfeasor remains personally liable for the excess. See Longworth v. Van Houten, 223 N.J.Super. 174, 183-86, 538 A.2d 414 (App.Div.1988). Moreover, in furtherance of this policy, statutes mandating insurance coverage are liberally construed to provide the broadest possible protection to injured parties. See Motor Club of Am. Ins. Co. v. Phillips, 66 N.J. 277, 293, 330 A.2d 360 (1974).
In view of our State's strong public policy of affording injured parties an opportunity to recover the full amount of their damages, we believe that if the Legislature had intended to immunize tortfeasors from liability for damages in excess of the Guaranty Association's $300,000 maximum liability, it would have included a provision in the Guaranty Act expressly stating this intent. The general statement of a legislative purpose "to minimize financial loss to claimants or policyholders because of the insolvency of an insurer," N.J.S.A. 17:30A-2(a), cannot reasonably be construed as an expression of legislative intent to favor policyholders over claimants by immunizing policyholders from liability for damages in excess of the Association's $300,000 maximum liability. Where either an innocent injured party or a tortfeasor must bear the adverse financial consequences of the insolvency of the tortfeasor's insurer and the $300,000 limit on the Association's liability, it is more reasonable to infer a legislative intent to favor the injured party. Cf. R.R. Roofing, supra, 85 N.J. at 389, 427 A.2d 66 (noting that the Guaranty Act "provide[s] some protection to policyholders of insurance companies which become insolvent.") (emphasis added). This conclusion is reinforced by the fact that, without enactment of the Guaranty Act, the holder of an insurance policy with an insolvent insurer would have been personally liable for the full amount of any damages caused by the policyholder's tortious conduct.
In support of their argument that they should not be held personally liable for any of plaintiff's damages, defendants rely primarily upon the reported Law Division opinion in Flaherty, supra, 367 N.J.Super. 565, 843 A.2d 1198, which held that a tortfeasor insured by an insolvent insurer under a policy with limits in excess of the Guaranty Association's $300,000 maximum liability is not personally responsible for any recovery above that amount. Flaherty heavily relied upon our opinions in Hendricks v. A.J. Ross Co., 232 N.J.Super. 243, 247-48, 556 A.2d 1267 (App.Div.1989) and Lehmann v. O'Brien, 240 N.J.Super. 242, 248-49, 573 A.2d 171 (App.Div.1989), which held that a tortfeasor may not be held personally liable for prejudgment interest that N.J.S.A. 17:30A-5(d) exempts the Association from paying. Contra Wilton v. Cycle Trucking Inc., 240 *968 N.J.Super. 326, 328-29, 573 A.2d 462 (App.Div.1989). However, there is a significant distinction between the issue presented in Hendricks and Lehmann and the issue in this appeal. One of the rationales for the award of prejudgment interest in tort cases is to discourage delay and "induce prompt defense consideration of settlement possibilities." Busik v. Levine, 63 N.J. 351, 359, 307 A.2d 571 (1973). Where a claim is covered by the Guaranty Act and consequently the Association controls the defense, the tortfeasor has no control over the timing of settlement negotiations or any responsibility for delay in disposition of the case. Therefore, this rationale for prejudgment interest would not support imposition of this obligation upon the tortfeasor for a claim payable by the Association. Furthermore, the obligation to pay prejudgment interest is derivative of the obligation to pay the judgment. Id. at 358-61, 307 A.2d 571. Consequently, it would be incongruous to impose liability for payment of the judgment on the Association but to impose liability for prejudgment interest on the tortfeasor. For these reasons, it is reasonable to infer that in exempting the Association from liability for prejudgment interest, the Legislature did not intend to transfer this liability to the tortfeasor.[4] However, as previously discussed, there is no comparable basis for inferring a legislative intent to exempt a tortfeasor from liability for damages in excess of the $300,000 limit on the Association's liability.
We recognize that part of the rationale in Hendricks and Lehmann for concluding that a tortfeasor should not be held liable for prejudgment interest was our view that N.J.S.A. 17:30A-5(d) "reflects a general legislative policy to avoid imposition of liability upon an insured for claims which may not be pursued against the Association," Lehmann, supra, 240 N.J.Super. at 248, 573 A.2d 171; Hendricks, supra, 232 N.J.Super. at 247, 556 A.2d 1267, and that Flaherty relied upon this interpretation of N.J.S.A. 17:30A-5(d), 367 N.J.Super. at 569-70, 843 A.2d 1198. However, upon further review, we now conclude that this interpretation of N.J.S.A. 17:30A-5(d) was too broad. The part of N.J.S.A. 17:30A-5(d) that we relied upon in Hendricks and Lehmann states:

"Covered claim" shall not include: (1) any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided, that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association, would be a "covered claim," may be filed directly with the receiver of the insolvent insurer, but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer....
[Emphasis added.]
We believe that, properly construed, this part of N.J.S.A. 17:30A-5(d) only addresses claims for "any amount due any reinsurer, insurer, insurance pool, or underwriting association," and that the term "such claim" in the final clause, upon which we relied in Hendricks and Lehmann, refers solely to a claim for "any amount due any reinsurer, insurer, insurance pool, or underwriting association." See Sussman v. Ostroff, 232 N.J.Super. 306, 311-15, 556 A.2d 1301 (App.Div.), certif. denied, 117 *969 N.J. 143, 564 A.2d 865 (1989). Therefore, this clause does not reflect a general legislative policy to exempt tortfeasors insured by insolvent insurance companies from any claim that may not be pursued against the Guaranty Association.
Because our conclusion that the holder of an insurance policy with limits in excess of the Guaranty Association's $300,000 maximum liability is liable for the amount of any judgment in excess of that amount is inconsistent with Flaherty, we overrule Flaherty.
Affirmed.
NOTES
[1] AIG's liability for any judgment in excess of $1,000,000 coverage provided by the Reliance policy is not in issue in this appeal. The only question is whether Braddy and Walsh are personally liable for the amount of any judgment in excess of $300,000 up to $1,000,000.
[2] N.J.S.A. 17:30A-12(b) provides that the amount otherwise payable under the Guaranty Act shall be reduced by the amount payable under any other insurance policy.
[3] There are only a limited number of cases in other states dealing with this issue, which reach conflicting results. An intermediate appellate court in Minnesota held that a tortfeasor is not personally liable for the award of any judgment in excess of the limit of the guaranty association's liability, but its opinion is conclusionary and does not contain any analysis of the relevant statutory provisions. Minnesota Mining & Mfg. Co. v. H & W Motor Express Co., 507 N.W.2d 622, 624 (Minn.Ct.App.1993). The Pennsylvania courts have held that a tortfeasor insured by an insolvent insurer remains liable for any judgment in excess of the guaranty association's maximum liability, see Burke v. Valley Lines, Inc., 421 Pa.Super. 362, 617 A.2d 1335, 1339 n. 5 (1992); Osborne v. Neville, 65 Pa. D. & C. 4th 225, 238-45 (Ct.Com.Pl.2004), but only the trial court opinion in Osborne contains any discussion of the issue. A number of decisions in other states also suggest, without dealing directly with the issue, that the tortfeasor remains liable for the amount of any judgment in excess of the guaranty association's limit of liability. See, e.g., Washington Ins. Guar. Ass'n v. Ramsey, 922 P.2d 237, 246 (Alaska 1996); Gygax v. Brugoto, 674 So.2d 366 (La.Ct.App.), cert. denied, 679 So.2d 107 (La.1996); Carrier v. Hicks, 316 Or. 341, 851 P.2d 581, 586 n. 5 (1993).
[4] Neither Hendricks nor Lehmann considered a tortfeasor's liability for prejudgment interest on the part of any judgment in excess of the $300,000 limit on the Association's liability. We also express no view on this issue.