890 A.2d 944

FREDERICK JOHNSON AND MARGARET ANN JOHNSON, HIS WIFE, PLAINTIFFS, v. WILLIE R. BRADDY, BRADDY TRUCKING AND WALSH TRUCKING, DEFENDANTS–APPELLANTS, AND JOHN AND JANE DOES 1–10 AND ABC CORPORATION (FICTITIOUS INDIVIDUALS, CORPORATIONS OR OTHER BUSINESS ENTITIES PRESENTLY UNIDENTIFIABLE, DEFENDANTS).

Argued January 3, 2006—Decided February 1, 2006.

*Leonard C. Leicht* argued the cause for appellants (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys).

*John Zen Jackson* argued the cause for amicus curiae New Jersey Hospital Association (*Kalison, McBride, Jackson & Murphy,* attorneys).

*Robert J. Conroy* argued the cause for amicus curiae Medical Society of New Jersey (*Kern Augustine Conroy & Schoppmann,* attorneys).

PER CURIAM.

In 1999, defendant Willie Braddy drove his truck into a parked vehicle in which plaintiff Frederick Johnson was seated, severely injuring Johnson. At the time of the accident, Braddy's employer was insured under a $1 million liability policy issued by Reliance Insurance Company (Reliance) and an umbrella policy issued by National Union Insurance Company that provided coverage for any judgment in excess of the Reliance coverage up to $25 million.

After Johnson[1] filed suit against Braddy and his employers, Reliance became insolvent and was liquidated by the Pennsylvania Insurance Commissioner. The liquidation, in turn, triggered the New Jersey Property–Liability Insurance Guaranty Act (Act), *N.J.S.A.* 17:30A–1 to –20, which was established "to minimize financial loss to claimants or policyholders because of the insolvency of an insurer...." *N.J.S.A.* 17:30A–2(a). The Act established the New Jersey Property–Liability Insurance Guaranty Association (PLIGA), made up of all insurers "admitted or authorized" to conduct insurance business in the state, *N.J.S.A.* 17:30A–5(f), and covers claims up to $300,000 against an insolvent insurer. *N.J.S.A.* 17:30A–8(a)(1). However, the Act is silent as to whether

---

[1] Johnson's wife also sued *per quod.*

policyholders are personally liable for judgments in excess of that figure.

After some procedural maneuvering that need not be recounted here, defendants moved for summary judgment, arguing that a responsibly insured citizen whose insurer becomes insolvent should not be exposed to personal liability for amounts that would have been covered by the policy had its insurer not failed. Defendants claimed that the text of the Act itself supports that position.

Plaintiffs countered that under PLIGA, an insured is personally liable for any amount above $300,000. According to plaintiffs, the statutory figure is a cap to insurance coverage that the State provides when an insurer becomes insolvent and the tortfeasor is essentially a self-insurer beyond that figure. Plaintiffs also argued that the text of the statute does not explicitly release the tortfeasor from claims in excess of $300,000. The trial judge agreed with plaintiffs and defendants moved for leave to appeal, which was granted.

In a published opinion, an Appellate Division panel affirmed the trial judge's denial of summary judgment. *Johnson v. Braddy,* 376 *N.J.Super.* 215, 869 *A.*2d 964 (App.Div.2005). In so doing, the panel concluded that, in the absence of a statutory directive to the contrary, PLIGA should be construed to give the injured party the right to recover damages from the policyholder above the PLIGA maximum. *Id.* at 217, 869 *A.*2d 964.

Defendants moved for leave to appeal, which we granted. 184 *N.J.* 159, 875 *A.*2d 952 (2005). Here, they reiterate the arguments advanced before the Appellate Division and underscore the devastating impact of the Appellate Division's decision on financially responsible individuals who procure insurance from carriers that later become insolvent.

We have carefully reviewed the decision of the Appellate Division in light of those arguments and have concluded that it is legally unassailable. We therefore affirm substantially for the

reasons expressed in Judge Skillman's thorough and thoughtful opinion.

We add only this. We recognize the potentially catastrophic effect that this ruling may have on responsible citizens who have purchased insurance to protect themselves and the victims of accidents in which they are involved. In this matter, for example, the insured may be exposed to up to a $700,000 payment representing the difference between the $300,000 PLIGA cap and the $1 million excess insurance threshold purchased by defendants. Such payments could wipe out a party that acted in good faith to procure insurance. The situation is exacerbated, according to the parties, because insurance to cover the insolvency of a primary carrier is simply not available.

We therefore commend this issue to the Legislature for such remedial action as it deems appropriate. Here, the interests of innocent victims are pitted against those of our citizens who have done everything within their power to protect themselves from exposure to tort claims but whose efforts have been thwarted by the insolvency of an insurer. Reconciling those competing interests, while difficult, is not an insurmountable task. One obvious approach would be to alter the PLIGA cap so that it is co-extensive with the insurance coverage purchased from the insolvent insurer; another approach would be to immunize the insured of an insolvent insurer to the extent of the coverage purchased from that insurer. Both answers have positive and negative implications that the Legislature can assess and act accordingly.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.