548 A.2d 1215

**Lois BETHEA and Lonnie Bethea and James Dunston and Barbara Dunston and Mildred Johnson, Appellants,**

**v.**

**Delmus R. FORBES, Appellee.**

Supreme Court of Pennsylvania.

Submitted Nov. 9, 1987.

Decided Oct. 17, 1988.

Allen L. Feingold, Philadelphia, for appellant.

Alan Greenberg, John Cannon, III, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS, and STOUT, JJ.

## OPINION

NIX, Chief Justice.[*]

The appellants herein, who were co-plaintiffs in a tort action against a motorist who had become uninsured because of the insolvency of his liability carrier, seek reversal of an order by the trial court dismissing their lawsuit. The trial court predicated its order on the fact that the plaintiffs had received payments pursuant to the uninsured motorist coverage in the automobile insurance policy of one of their group. The court reached a legal conclusion that the settlement was such as would preclude the plaintiffs from obtaining any further recovery under The Pennsylvania Insurance Guaranty Association Act, and, for that reason, precluded them from proceeding against the alleged tortfeasor.

When the Superior Court, by a memorandum opinion, 354 Pa.Super. 622, 508 A.2d 335 affirmed the trial court's order, the appellants petitioned us for further review. We granted the petition because of an obvious need to address the narrow question of law actually involved.

[*] Reassigned to this writer July 13, 1988.

This case arose from an accident involving two automobiles, one a car owned and operated by a Mrs. Lois Bethea, and the other a vehicle owned and operated by a Mr. Delmus Forbes. With Mrs. Bethea in her car were several passengers. When the accident occurred, May 5, 1977, Mrs. Bethea was insured by Government Employees Insurance Company ("GEICO"); and Mr. Forbes was insured by Safeguard Mutual Insurance Company ("Safeguard").

In 1978, all of the persons who were in the Bethea vehicle at the time of the accident joined in a trespass action against Delmus Forbes, asserting that he was responsible for the accident. In that suit, filed in the Court of Common Pleas of Philadelphia County, each of the plaintiffs sought damages for personal injury. Lois Bethea also included a claim for damage to her car. While that action was pending, Mr. Forbes' liability insurer, Safeguard, was declared insolvent. The company was subsequently dissolved pursuant to an order of the Commonwealth Court, dated April 12, 1982.

In view of the insolvency and dissolution of Safeguard, the plaintiffs in the action against Forbes made claims against GEICO, under the uninsured motorist provision in Lois Bethea's policy with that company. GEICO eventually settled those claims, but for a total sum that was less than the applicable limits under Bethea's policy.

The insolvency of Safeguard brought into operation the provisions of The Pennsylvania Insurance Guaranty Association Act ("Insurance Guaranty Act"), Act of November 25, 1970, P.L. 716, *as amended*, 40 P.S. § 1701.101 *et seq.* That statute was enacted to give a measure of protection to policyholders and claimants who are faced with financial loss because of the insolvency of certain carriers of property and casualty insurance. Section 102(1) of the Act, 40 P.S. § 1701.102(1). To implement that purpose, the statute established the Pennsylvania Insurance Guaranty Association ("Association"), and charged it with the obligation of paying "covered claims" under property and casualty policies issued by insurers that become insolvent. Section 201

of the Act, 40 P.S. § 1701.201. The Association becomes a statutory insurer in place of the insolvent carrier to the extent of its obligation on covered claims. 40 P.S. § 1701.-201(b)(1)(ii). In that connection, the Association has "all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent." *Id.*

The Association's duty to pay claims is, of course, subject to conditions, not the least of which is the requirement set forth in section 503(a) of the Act. That provision states the following:

### Non-duplication of recovery

Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, *shall first be required to exhaust his right under such policy.* Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy.

40 P.S. § 1701.503(a) (emphasis added).

In its general effect, the import of the first sentence in the above provision is clear: Even if a claim is one otherwise covered by the Insurance Guaranty Act, a person's right to obtain relief under the statute does not arise unless or until he has exhausted such rights as he has, with respect to the "covered claim," under an insurance policy other than the one issued by the insolvent. An obvious example of such a situation is where a person has been negligently injured in an automobile accident, and, being unable to obtain payment from the insolvent insurer of the tortfeasor, may look to the uninsured motorist provision in his own insurance policy or in some other applicable policy.

Because the Association statutorily succeeded to the role of insurer in place of the insolvent Safeguard, it also incurred the latter's duty of defending Delmus Forbes in the tort action against him. In the context of defending Forbes, the Association moved the trial court to order the case "discontinued and ended." The Association's argument in support of its motion began with the following

premise: that the plaintiffs, by settling with Lois Bethea's insurer for less than the policy limits of her uninsured motorist coverage, had failed to "exhaust" their rights under that policy, and thus, by force of the "exhaustion" requirement in section 503(a) of the Insurance Guaranty Act, they could not successfully pursue a claim under that statute. Based on that premise, the Association arrived at a conclusion that the plaintiffs lost the right to proceed further against defendant Delmus Forbes. The trial court embraced that reasoning and, accordingly, entered an order terminating the lawsuit. The Superior Court, affirming with a seven-line opinion, cited no authority for the result reached.

The appellants argue that their uninsured motorist settlement with GEICO, regardless of whatever legal effect it might have under the Insurance Guaranty Act, did not bar them from continuing with their tort action against Delmus Forbes. We agree.

It is axiomatic that, in a common law tort action, the tortfeasor is liable for all injury caused by his negligence or other unlawful conduct. *E.g., Pavorsky v. Engels,* 410 Pa. 100, 188 A.2d 731 (1963); *Menarde v. Philadelphia Transportation Co.,* 376 Pa. 497, 103 A.2d 681 (1954); *Offensend v. Atlantic Refining Co.,* 322 Pa. 399, 185 A. 745 (1936). It is also a fundamental, general principle that a plaintiff in such an action is entitled to compensation from the tortfeasor to the full extent of the injury sustained. *E.g., Incollingo v. Ewing,* 444 Pa. 299, 307, 282 A.2d 206, 228 (1971); *Corcoran v. McNeal,* 400 Pa. 14, 161 A.2d 367 (1960). It is clearly within the realm of possibility that Mr. Forbes, the alleged tortfeasor in the instant matter, injured the plaintiffs to an extent that exceeded the uninsured motorist coverage in the GEICO policy. Therefore, the plaintiffs' settlement under that policy cannot deprive them of the legal right to seek full compensation from the tortfeasor, even if the effort presents little or no prospect for

satisfaction.[1]

With regard to the above point, the "Uninsured Motorist Act"[2] itself is instructive. Section 1(d) of that statute provides, in part, as follows:

In the event of payment to any person under the coverage required by this section, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or *judgment* resulting from *the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made,* including the proceeds recoverable from the assets of the insolvent insurer.[3]

(Emphasis added.)

This statutory language is a clear indication that a person receiving payment pursuant to uninsured motorist coverage retains the right to proceed to judgment against the tortfeasor.

In view of what we have said, the trial court's order dismissing the plaintiffs' tort action was palpably erroneous. The Association's role in the case was strictly in terms of defending the alleged tortfeasor with respect to the claims against him; it was not defending against a claim under the Insurance Guaranty Act.

For the reasons set forth herein, the order of the Superior Court is reversed; and the matter is remanded to the trial court with a direction to reinstate the plaintiffs' action.

ZAPPALA, J., files a concurring opinion.

LARSEN, J., files a concurring and dissenting opinion.

FLAHERTY, J., concurs in the result.

1. Although the plaintiffs' action was commenced during the era of the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. §§ 1009.101 *et seq.* (repealed), there is nothing to indicate that their claims were not such as to preserve their right to bring a common law tort action.

2. Act of August 14, 1963, P.L. 909, *as amended,* 40 P.S. § 2000.

3. 40 P.S. § 2000(d).

428

ZAPPALA, Justice, concurring.

I agree with the majority that the Appellants' action against the Appellee should be reinstated so that they may pursue their negligence claim against the Appellee; however, I would also address the issue of whether the Appellants' settlement of the uninsured motorist claims for less than the coverage limits precludes recovery under the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.101 et seq. I would hold that the settlement of the uninsured motorist claims for less than the limits of coverage is a failure to exhaust the claimants' rights under the policy which precludes recovery under the Act.

The Pennsylvania Insurance Guaranty Association was not created to establish an alternate source of payment for claims arising out of an automobile accident. It was intended to replace the coverage which an insured had obtained, but which became unavailable due to the insurer's insolvency. Ultimately, the Association is the insurer for an insurer.

Contemplating that financial insolvency of an insurer would expose an insured to the same economic risk he had purchased protection from, the legislature developed a statutory scheme to avoid that unfortunate result. Intending the Association to be a stopgap measure, the legislature provided that a claimant who could seek recovery under a policy other than that of the insolvent insurer must first exhaust his right under such policy. 40 P.S. § 1701.503(a). This provision reflects the legislature's intent that fiscally solvent insurers, which are contractually obligated to pay a claim, be the primary source of payment.

The Association's resources were not intended to be used unless the coverage provided by the solvent insurers was: (1) less than that provided by the insolvent insurer, and (2) inadequate to cover the damages sustained by the claimant. The legislative scheme provided that the Association would be the last resort for payment of a claim. By requiring that solvent insurers who had received premiums pay such claims first, the legislature sought to ensure that the Asso-

ciation would not provide coverage for risks for which those insurers had contracted and been compensated.

I concur with the analysis of the Washington Court construing the identical provision under its law in *Prutzman v. Armstrong*, 90 Wash.2d 118, 579 P.2d 359 (1978). The court stated,

> The act makes available a source of funds for payment to claimants of insurers which later become insolvent, only to the extent that the claimant has no other source of insurance proceeds from which to recover for his losses. It does not provide a claimant with an alternative source of proceeds equal to the insolvent insurer's coverage limits less whatever amount he may have unilaterally agreed to accept in settlement of claims under other insurance policies.

90 Wash.2d at 122, 579 P.2d at 362.

To hold otherwise would destroy that well-conceived scheme. I disagree with Justice Larsen's analysis in his concurring and dissenting opinion that the legislature's purpose was to avoid excessive delay in the payment of claims. The delay in payment of claims foreseen by the legislature was that which would result from the stay of proceedings against the insolvent insurer. The potential delay due to litigation resulting from defending an action either as to liability or damages was not the legislative concern in creating the Association. The payment or settlement of a claim of an injured party is not automatic upon request or by initiation of a lawsuit regardless of whether the claim is made to the solvent insurer or to the Association. The fallacy of that reasoning is easily demonstrated by the fact that the Association itself may defend against the injured party's claim.

While it is true that under Justice Larsen's view that settlement between a claimant and his own insurer would be encouraged, it would be at a loss to the Association. Justice Larsen's view would provide the incentive to encourage settlement for less than the bargained for coverage for which premiums were paid. Under his analysis, a claimant

and his insurance company could negotiate for payment of less than the claimant's damages, knowing that the Association will be responsible for the remainder. At that point, the claimant and his insurer have a community of purpose. Neither party could lose. That would be an absurd result.

It would be meaningless to impose a "good faith" requirement upon the settlement proceedings. Other than actual proof of collusion between the insurer and the claimant, an unlikely and impossible burden, the claimant could not be shown to be acting in bad faith in accepting an offer of settlement.

The safeguard of the Association was intended for an insured whose insurer becomes insolvent and a claimant seeking damages with no other sources of recovery. I would not extend that protection to *solvent* insurers, contrary to the legislative intent.

LARSEN, Justice, concurring and dissenting.

I agree with the majority that the appellants' settlement under the uninsured motorist provisions of the Government Employees Insurance Company (GEICO) policy does not prevent them from seeking full compensation for their injuries from the tortfeasor, Delmus Forbes. Further, I concur in the remand of this case to the trial court with directions to reinstate appellants' action.

I, however, disagree with the majority's analysis of the issues before us in this appeal. After correctly holding that the appellants have the right to proceed to judgment against the alleged tortfeasor notwithstanding the uninsured motorist settlement, the majority goes on to conclude:

"The association's role in the case was strictly in terms of defending the alleged tortfeasor with respect to the claims against him; it was not defending against a claim under the Insurance Guaranty Act."

P. 427. This conclusion ignores the legal issues which were raised and argued by the parties in the lower court, con-

sidered and decided by the lower court,[1] and raised and briefed on appeal.

The appellants, in their brief, set forth the questions presented on appeal as follows:

"I.   Whether the Trial Court erred at law in discontinuing the instant action against Defendant Forbes merely because the Trial Court ruled that the Pennsylvania Insurance Guaranty Association need not provide insurance coverage?"

II.   Whether the Trial Court erred at law in discontinuing the instant action and in ruling that the Pennsylvania Insurance Guaranty Association, as a matter of law, has no obligation to provide insurance coverage in the instant claim?"

Brief of Appellant, p. 3.   The appellee, in his brief, sets forth a counter-statement of the questions involved in this appeal as follows:

1.   Did the trial court correctly find that plaintiffs settled their uninsured motorist claims for an amount less than plaintiff Lois Bethea's motor vehicle insurance policy limits?

2.   Does plaintiffs' settlement of uninsured motorist claims against plaintiff Lois Bethea's uninsured motorist carrier for an amount less than the insurance policy's coverage limits constitute failure to exhaust insurance policy rights under section 503(a) of the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.503(a)?

1.   In ordering discontinuance of appellants' lawsuit, the lower court said:

"This Court notes that the Superior Court set forth in *Henninger v. Riley,* [317] Pa.Super. [570], 464 A.2d [469] (1983) its lucid interpretation of the relevant section of the Pennsylvania Insurance Guaranty Association Act at 40 P.S. § 1701.503(a), applicable, as a matter of law, to the instant matter and affirmed thereby the cogent reasoning developed in profuse case law[1] by ruling, inter alia, that section 503(a), supra, requires claimants first to exhaust rights under uninsured motorist coverage afforded by their own policy before proceeding against the Pennsylvania Guaranty Association."   (Footnote omitted.)

432

3. Does failure to exhaust insurance policy rights under section 503(a) of the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.503(a), preclude plaintiffs from seeking recovery from either The Pennsylvania Insurance Guaranty Association or from defendant, Delmus R. Forbes, directly?

Brief of Appellee, p. 2.

Even though the lower court's decision to dismiss appellants' complaint is based upon its ruling that the appellants, in settling their uninsured motorist claims for an aggregate total less than the uninsured motorist policy limits, have failed to exhaust their rights under that coverage and therefore are precluded from any recovery under the Pennsylvania Insurance Guaranty Association Act, (Insurance Guaranty Act) 40 P.S. § 1701.101—1701.605, the majority, nevertheless, holds that the question of recovery under that act is not involved in this case. I disagree and therefore dissent to that part of the majority's opinion. In the rest of this opinion, I will consider the issue of first impression presented in this case, namely: whether the settlement of an uninsured motorist claim with one's own insurance carrier for a sum less than the policy limits precludes recovery from a third party tortfeasor whose insurer has been declared insolvent, and the Pennsylvania Insurance Guaranty Association (the Association), as statutory insurer, under the provisions of the Insurance Guaranty Act.

I.

The law of Pennsylvania mandates that all motor vehicle liability insurance policies issued in this Commonwealth shall contain coverage for the protection of persons who are injured or killed by uninsured motor vehicles. 40 P.S. § 2000(a). Under the provisions of the "uninsured motorist" statute, "the term 'uninsured motor vehicle' shall be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits

specified therein because of insolvency." 40 P.S. § 2000(b). Since the appellee's insurer, Safeguard, was declared insolvent, the appellee's automobile became an uninsured motor vehicle within the meaning of that Act.

Another statute of import where an insurer becomes insolvent—the one of particular concern in this case—is the Insurance Guaranty Act of 1970, Nov. 25, P.L. 716, No. 232, 40 P.S. § 1701.101 et seq. The Insurance Guaranty Act was enacted to provide replacement insurance for the protection of claimants and policyholders of an insurer who becomes insolvent at, about, or shortly after the time a loss occurs. Section 201 (40 P.S. § 1701.201) provides that the Association shall:

"Be obligated to make payment to the extent of the covered claims of an insolvent insurer existing prior to the determination of said insurer's insolvency, ... in excess of one hundred dollars ($100), and is less than three hundred thousand dollars ($300,000). In no event shall the association be obligated on a covered claim in an amount in excess of the obligation of the insolvent insurer under the policy under which the claim arises."

40 P.S. § 1701.201(b)(1)(i). Further, it is provided that the association shall:

"Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if that insurer had not become insolvent."

40 P.S. § 1701.201(b)(1)(ii).

Article V of the Act contains a "non duplication of recovery" provision, 40 P.S. § 1701.503, which provides as follows:

Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such policy. Any amount payable on a covered claim under this act

shall be reduced by the amount of any recovery under such insurance policy.

40 P.S. § 1701.503(a).

Under the Act, a covered claim is defined as "an unpaid claim including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer...." 40 P.S. § 1701.103(5)(a). "A covered claim shall not include any amount in excess of the applicable limits of the policy under which it arises." 40 P.S. § 1701.103(5)(c).

## II.

The appellants' claims in this case are covered claims within the definition of the Act in that they arose under the liability policy issued by Safeguard, an insolvent insurer. The appellants, however, settled their uninsured motorist claims against GEICO for a total sum which was less than the GEICO policy limits. The appellee contends that by accepting an amount less than the policy limits and voluntarily releasing GEICO from all liability, the appellants failed to exhaust their rights under the said GEICO policy as they are required to do by the non-duplication of recovery provision of the Insurance Guaranty Act. 40 P.S. § 1701.503(a) *supra*. Appellants, on the other hand, argue that the settlement of their uninsured motorist claims for a sum less than the policy limits does not foreclose them from seeking and obtaining a recovery against the tortfeasor and the Association. Appellants argue that the lower court erred in relying on the Superior Court cases of *Sands v. Pennsylvania Insurance Guaranty Association*, 283 Pa. Super. 217, 423 A.2d 1224 (1980) and *Henninger v. Riley*, 317 Pa.Super. 570, 464 A.2d 469 (1983) and holding that appellants failed to exhaust their rights under the GEICO policy, and that their failure in this regard precludes their proceeding in this case. I agree with appellants that the lower court erred.

In *Sands v. Pennsylvania Insurance Guaranty Association, supra,* the Superior Court did not decide the case on

the basis that the claimant there failed to exhaust his rights under an applicable uninsured motorist policy. Rather, that court found that any claim the injured plaintiff had against the uninsured motorist carrier was not a "covered claim" in that it did not arise from the insolvency of an insurer. *Id.*

*Henninger* is inapposite in that in that case the injured plaintiffs failed to make any claim against their carrier for uninsured motorist benefits before seeking recovery against the Association.

### III.

The statutes of this Commonwealth provide a legislative scheme for the payment of claims arising from the negligence of a tortfeasor whose insurance carrier subsequently is declared insolvent.

### (a.)

The legislature specifically included within the definition of an "uninsured motor vehicle" an insured vehicle where the insurer has become insolvent. 40 P.S. § 2000(b). Additionally, the uninsured motorist Act provides that whenever an insurer makes payment under uninsured motorist coverage because of the insolvency of the tortfeasor's insured, the insurer making such payment shall have no right to reimbursement against the insured of the insolvent insurer. These provisions establish a means of recovery for those who are injured by a driver who, at the time of the injury had proper insurance coverage, but who, after the accident lost that protection due to the insolvency of his insurer. The provisions also afford a measure of protection to the insured driver whose insurance coverage evaporates when his carrier becomes insolvent. The uninsured motorist carrier is barred from seeking reimbursement from that driver whose insurer is unable to meet its obligations. Thus, the injured party has an insurance fund to look to for payment of damages, and the tortfeasor who had insurance but lost it through no fault of his own is not left entirely exposed. These provisions which provide a minimum measure of protection nonetheless leave many injured victims

without adequate compensation. For example, in a situation where there is no policy containing uninsured motorist coverage available to the injured party, there is no source of funds other than the tortfeasor himself. Similarly, where an injured victim does have an uninsured motorist policy to look to for payment, but whose damages far exceed the uninsured motorist limits, that victim would generally be stuck with the inadequate limits even though the tortfeasor's policy of insurance with the insolvent carrier had limits that would have been sufficient to provide adequate compensation.

(b.)

To avoid these kinds of financial losses, the legislature enacted The Insurance Guaranty Act, (40 P.S. § 1701.101, et seq.) Under that Act the Association was created. The Act requires that every insurance company authorized to write property and casualty policies in Pennsylvania participate in the Association. 40 P.S. § 1701.201(a). Under the Act, the Association is required to pay covered claims of an insolvent insurer which are more than $100 and less than $300,000. Generally, there is no circumstance where the Association is obliged to pay an amount which exceeds the policy obligation of the insolvent insurer. Further, the Act provides that a claimant under a policy of an insolvent insurer who has a claim against an insurer other than the insolvent insurer, shall be required to exhaust his right under that policy before looking to the Association. Finally, any amount that the injured party recovers from such other insurance coverage shall reduce, by the sum of that recovery, the amount of any recovery against the Association.

Thus, by the provisions providing for the creation and establishment of the Association, the statutory plan created a source of funds for payment to injured claimants of insurance companies that become insolvent. Those funds are available "to avoid excessive delay in the payment of such claims, and to avoid financial loss to claimants or policyholders" that may result from the insolvency of a tortfeasor's insurer. (40 P.S. § 1701.102.).

## IV.

In the instant case, when the appellee's carrier became insolvent the appellants had the GEICO insurance policy with uninsured motorist coverage to look to for payment of their damages. Under the Act, appellants were first required to exhaust their rights under that coverage before proceeding against the Association.

In seeking recovery for their damages, the appellants settled their claims for an amount less than the limits of the uninsured motorist coverage.[2] Thus, the question of first impression in this case is reached: Does the settlement of appellants' claims for less than the uninsured motorist coverage limits "exhaust" appellants rights under that policy within the meaning of Section 503 of the Insurance Guaranty Act? I would hold that it does. By claiming and obtaining uninsured motorist benefits of GEICO, appellants have exhausted their rights so that they may now proceed to seek from the Association, recovery of the amount of their damages that exceeds the uninsured motorist recovery, up to the policy limits of the insolvent insurer.[3] As I have noted, the Insurance Guaranty Act declares that one of its primary purposes is to avoid financial losses to claimants. Consistent with this stated purpose, the Association is to make up the difference between the amount paid to appellants by the uninsured motorist carrier and the actual damages sustained by appellants, up to the insolvent insurer's policy limits.

In the practical world of claims settlement, it is not unusual for insurance carriers to seek to settle claims for sums less than the policy limits. Even where liability is clear and damages are extensive, many carriers will often

2. Where a claimant settles an uninsured motorist claim for an amount less than the policy limits, such settlement will satisfy the "exhaustion" provision of the Guaranty Association Act unless it is shown that the settlement was not made in good faith and was not the product of claimant's best efforts.

3. There is nothing in this case to suggest that the settlement of appellants' uninsured motorist claims were other than in good faith and the result of appellants' honest efforts to obtain the best settlement reasonably possible under the circumstances.

attempt to settle for an amount close to or slightly less than its policy limits. For example, if the policy limits are $50,000, it is not uncommon for an insurer to press for a settlement sum of $48,500 or $49,000 or $49,500. Often it may make economic sense for an injured claimant to settle for a slightly reduced sum in order to obtain much needed funds "now" instead of "later."

The law favors settlements and fosters policies that encourage parties to settle claims without a trial. Our legal system has adopted procedures to this end, such as the pre-trial conciliation conference where settlement possibilities are explored in depth by the court and the parties prior to trial. If this Court were to hold that settlement of appellants' uninsured motorist claims for less than the policy limits did not "exhaust" their rights within the meaning of the Insurance Guaranty Act as urged by appellee and as the majority seems to suggest we should, we would be adopting a policy that discourages settlements and requires claimants to fully litigate uninsured motorists claims. Further, a stated purpose of the Guaranty Association Act would be ignored.

As previously noted, the Insurance Guaranty Act provides that another of its primary purposes is "to avoid excessive delay in payment of such claims." If this Court were to accept appellee's argument that appellants' settlement for less than the uninsured motorist policy limits did not "exhaust" appellants' rights under 40 P.S. § 1701.503, claimants would be required to forego prompt settlements in favor of litigation thereby delaying unnecessarily their claims for damages, contrary to the intent of the Insurance Guaranty Act.[4]

4. In further support of the argument that appellants' settlement of their uninsured motorist claims for less than policy limits is not "exhaustion" of their rights under 40 P.S. § 1701.503, appellee cites several cases from other jurisdictions, including: *Vokey v. Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 409 N.E.2d 783 (1980); *Hickerson v. Protective National Insurance Company of Omaha*, 383 So.2d 377 (La.1980); *King v. Jordan*, 601 P.2d 273 (Alaska 1979); *Spearman v. State Security Insurance Company*, 57 Ill.App.3d 393, 14 Ill.Dec. 729, 372 N.E.2d 1008 (1978); and *Lucas v. Illinois Insurance*

I would reverse the order of the Superior Court and remand this case to the Philadelphia County Common Pleas Court for proceedings consistent with this concurring and dissenting opinion.

*Guaranty Fund,* 52 Ill.App.3d 237, 10 Ill.Dec. 81, 367 N.E.2d 469 (1977). I have reviewed these cases and find that they did not consider the specific issue raised in the instant case. I agree with the observation made in *Vokey* that these cases generally stand for the notion that the collateral source rule has no application to the recovery of uninsured motorist proceeds in these situations, and such proceeds are to be offset against any recovery obtained from the Guaranty Fund.

The appellee also cites *Prutzman v. Armstrong,* 90 Wash.2d 118, 579 P.2d 359 (1978) where the court did hold that settlement of an uninsured motorist claim for less than policy limits was inadequate to constitute exhaustion under the Washington Insurance Guaranty Act. For the reasons I have set forth above, I reject the rule adopted by the state of Washington in *Prutzman,* and would hold to the contrary.