JAIME L. ROBINSON *v.* RONALD R.
GAILNO, JR.
(SC 17385)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 16—officially released September 6, 2005

*J. Xavier Pryor*, for the appellant (plaintiff).

*Kenneth H. Naide*, for the appellee (defendant).

*Charles W. Pieterse, Joseph C. Tanski*, pro hac vice, and *Gordon M. Jones III*, pro hac vice, filed a brief for the Connecticut Insurance Guaranty Association as amicus curiae.

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the trial court properly concluded that General Statutes § 38a-845 (1)[1] requires a claimant to obtain the full amount of coverage available under the limits of her own uninsured motorist insurance policy before she may recover damages, either personally or through the Connecticut Insurance Guaranty Association (association), from a tortfeasor who is uninsured as a result of his insurer's insolvency. The plaintiff, Jaime L. Robinson, brought this action against the defendant, Ronald R. Garno, Jr.,[2] seeking damages for personal injuries sustained as a result of an automobile accident that was caused by the defendant's alleged negligence and recklessness. The plaintiff appeals[3] from the judgment

[1] General Statutes § 38a-845 (1) provides: "Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under sections 38a-836 to 38a-853, inclusive, shall exhaust first his rights under such policy. Any amount payable on a covered claim under said sections shall be reduced by the amount recoverable under the claimant's insurance policy or chapter 568."

[2] We note that the defendant is named incorrectly as Ronald R. Gailno, Jr., in the complaint and other documents in the record.

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

rendered after the trial court granted the defendant's motion for a directed verdict, and subsequently denied the plaintiff's motions to set aside the verdict and for a new trial. We conclude that a claimant who has unsuccessfully attempted to obtain the full coverage limits of her own uninsured motorist policy has satisfied § 38a-845 (1) and, therefore, may bring an action to collect from the tortfeasor, either personally or through the association, with any recovery from either of those sources reduced by the full amount of those policy limits. Accordingly, we reverse the judgment of the trial court and remand the case for a new trial.

The record reveals the following relevant facts and procedural history. In March, 2001, the plaintiff was injured in an automobile accident with the defendant.[4] Thereafter, the plaintiff brought this action to recover both economic and noneconomic damages, claiming that she was entitled, inter alia, to compensatory and double and treble damages pursuant to General Statutes § 14-295,[5] for injuries caused by the defendant's allegedly negligent and reckless conduct. At the time of the accident, the defendant had an automobile liability insurance policy from Reliance Insurance Company of

[4] The plaintiff alleged that the accident was a head-on collision that occurred during snowy conditions in March, 2001, on a curve in the driveway of the Allied Printing facility in Manchester. She alleged that the defendant was showing off for onlookers by operating his pickup truck at an unreasonably high rate of speed in freshly fallen snow, causing it to veer from side to side before crossing into her travel lane.

[5] General Statutes § 14-295 provides: "In any civil action to recover damages resulting from personal injury, wrongful death or damage to property, the trier of fact may award double or treble damages if the injured party has specifically pleaded that another party has deliberately or with reckless disregard operated a motor vehicle in violation of section 14-218a, 14-219, 14-222, 14-227a, 14-230, 14-234, 14-237, 14-239 or 14-240a, and that such violation was a substantial factor in causing such injury, death or damage to property. The owner of a rental or leased motor vehicle shall not be responsible for such damages unless the damages arose from such owner's operation of the motor vehicle."

Pennsylvania (Reliance), with bodily injury coverage in the amount of $20,000. Reliance, however, became insolvent prior to the commencement of this action, and the association assumed the defense pursuant to the Connecticut Insurance Guaranty Association Act (guaranty act), General Statutes § 38a-836 et seq. The plaintiff then filed a claim with her automobile insurer, the United States Automobile Association (USAA), because she had uninsured or underinsured motorist coverage with policy limits of $100,000 per person. The plaintiff then filed a civil action against USAA to recover that sum, which she subsequently withdrew after settling her coverage claim against USAA for $80,000.[6]

In his answer, the defendant raised multiple special defenses, including that: (1) he is entitled to an automatic reduction of any adverse judgment by the amount paid to the plaintiff by any solvent insurer, the association, or other source relating to the plaintiff's claim; and (2) pursuant to § 38a-845 (1), the defendant is not liable to pay an adverse judgment because the plaintiff failed to exhaust all solvent insurance, governmental insurance or guaranty programs.[7] At trial, after the plaintiff presented her case-in-chief, the defendant moved for a directed verdict. The trial court granted that motion, concluding orally that, although directed verdicts are "disfavored," the plaintiff had failed to exhaust her rights under her uninsured motorist insurance policy with USAA because she had settled for $80,000, when the policy limit was $100,000. The trial court relied on

---

[6] We note that the plaintiff's coverage action against USAA previously had been consolidated with the present case.

[7] The defendant initially had raised these defenses in a motion to dismiss, which the trial court, *Wagner, J.*, denied, stating that the issues would more properly be raised as special defenses. Once these exhaustion issues were raised as special defenses, the trial court, *Hale, J.*, subsequently sustained the defendant's objections to the plaintiff's requests to revise the special defenses, and declined to entertain as untimely the plaintiff's subsequent motion to strike those special defenses.

an affidavit from Lawrence Connelli, an attorney for USAA, stating that the settlement was based on that company's valuation of the case, with no consideration given to any potential offsetting sums from the association or other sources. The trial court also cited the exhaustion language from the statute, as well as *Doucette* v. *Pomes*, 247 Conn. 442, 724 A.2d 481 (1991), and *Harbor Ins. Co.* v. *Connecticut Ins. Guaranty Assn.*, 711 F. Sup. 70 (D. Conn. 1989), to support its conclusion. The trial court further concluded that, although the association "is not an actual party in this case . . . [t]he court finds also that if there was a judgment against the . . . defendant, [the association] would have to pay that amount just as any insurance company who is not a party and in a regular lawsuit, driver versus driver, the insurance company would have to pay. [The association] in this case bears the financial responsibility they have, the financial interest in this case and that they would be required to pay. And any judgment against the . . . defendant, they are standing in the shoes of his company Reliance which is insolvent and doesn't exist any more."[8] Thereafter, the trial court rendered judgment for the defendant in accordance with the directed verdict,[9] and this appeal followed.[10]

On appeal, the plaintiff raises a litany of claims that boil down to a single dispositive issue, namely, whether

---

[8] We note that shortly before the trial commenced, the trial court denied the association's motion to intervene pursuant to General Statutes § 38a-851. The association has, however, appeared in this appeal as amicus curiae. See footnote 13 of this opinion.

[9] The trial court subsequently denied the plaintiff's motions to set aside the verdict and for a new trial, wherein she contended that she had established a prima facie case as to the defendant's negligence and recklessness, as well as causation and damages. The plaintiff also claimed that she had introduced sufficient proof of damages, with the "numerical determination" to be left to the jury.

[10] We note that the trial court subsequently denied the plaintiff's Practice Book § 66-5 motion for articulation, and that the Appellate Court dismissed the plaintiff's motion for review of that denial. We further note that the record is adequate for review of the issues raised by the plaintiff in this appeal.

the plaintiff's settlement of her uninsured motorist claim for less than her policy limits, constitutes the required exhaustion of that insurance policy under § 38a-845 (1).[11] The plaintiff claims that the plain language of the statute does not require that she exhaust the policy limits in their entirety, but rather only her "rights" under the policy. The plaintiff further contends that her rights under that policy are defined by the uninsured and underinsured motorist statute, General Statutes § 38a-336 (b),[12] and that she, therefore, potentially may recover an additional $20,000 from the association because that statute permits her to recover the limit of her uninsured motorist policy, which is $100,000. The defendant, citing *Carrier* v. *Hicks*, 316 Or. 341, 851 P.2d 851 (1993), argues in response that the word "exhaust" requires the plaintiff to recover the

[11] The plaintiff also contends that the trial court improperly granted the defendant's motion for a directed verdict under § 38a-845 because: (1) the association is not a party to this case and the defendant should not have been permitted to assert defenses on its behalf; (2) she established a prima facie case on both the negligence and recklessness counts of the complaint; and (3) the trial court's order granting the defendant's motion in limine precluding the mention of insurance at the trial also precluded the defendant's special defenses. The plaintiff also contends that the trial court improperly: (1) denied her motion for articulation; see footnote 10 of this opinion; and (2) denied her motion for judgment notwithstanding the verdict. We need not reach the plaintiff's other claims on appeal.

[12] General Statutes § 38a-336 (b) provides: "An insurance company shall be obligated to make payment to. its insured up to the limits of the policy's uninsured and underinsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured and underinsured motorist coverage, exceed the limits of the insured's uninsured and underinsured motorist coverage. In no event shall there be any reduction of uninsured or underinsured motorist coverage limits or benefits payable for amounts received by the insured for Social Security disability benefits paid or payable pursuant to the Social Security Act, 42 USC Section 301, et seq. The limitation on the total amount of recovery from all policies shall not apply to underinsured motorist conversion coverage purchased pursuant to section 38a-336a."

entire $100,000 policy limit before she may recover any moneys either from the association or a person insured by the association pursuant to the guaranty act.[13] The defendant also contends that his construction of § 38a-845 (1) is consistent both with the common usage of the word "exhaust," and the purpose of the guaranty act as a source of last resort for the payment of tort claims.

"The standards for appellate review of a directed verdict are well settled. Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 497–98, 853 A.2d 460 (2004). In the present case, the trial court's decision to grant the defendant's motion for a directed verdict was based on its interpretation of § 38a-845 (1). Accordingly, this presents an issue of statutory construction over which our review is plenary.

---

[13] The association, appearing herein as amicus curiae, argues in support of the defendant and contends that we should follow the line of sister state cases holding similarly to *Carrier* v. *Hicks*, supra, 316 Or. 341, and requiring complete recovery of the uninsured motorist policy limits before the plaintiff may proceed against the uninsured tortfeasor or the association. The association also contends, as an alternate position, that we should follow the line of cases exemplified by *Hasemann* v. *White*, 177 Ill. 2d 414, 420, 686 N.E.2d 571 (1997), that permit the plaintiff to proceed against the tortfeasor, but reduce the amount payable by the tortfeasor or the association by the policy limits available from the plaintiff's uninsured motorist coverage.

"The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

We begin with the text of § 38a-845 (1), which provides: "Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under sections 38a-836 to 38a-853, inclusive, *shall exhaust first his rights under such policy*. Any amount payable on a covered claim under said sections shall be reduced by the amount *recoverable* under the claimant's insurance policy or chapter 568." (Emphasis added.)

We begin with the common usage and ordinary meaning of the words of the statute that are at issue, namely, "exhaust" and "rights," which are "determined appropriately by review of [their] dictionary definition[s] . . . ." (Citations omitted.) *Manifold* v. *Ragaglia*, 272 Conn. 410, 421 n.12, 862 A.2d 292 (2004). Webster's Third New International Dictionary defines "exhaust," in relevant part, as "to use up the whole supply or store of: expend or consume entirely . . . ." The otherwise plain meaning of the word "exhaust" is, however, rendered ambiguous by the use of the word "rights" with respect to the relevant insurance policy. Webster's Third New International Dictionary defines the word "right" in relevant part as "something to which one has a just claim: as . . . a power or privilege vested in a person by the law to demand action or forbearance at the hands of another . . . a claim recognized and delimited by law for the purpose of securing it . . . ." Although the plaintiff's uninsured motorist policy has a coverage limit of $100,000, she may not necessarily

have, in all cases, a just claim to that full amount. Moreover, the statute is silent as to whether "exhaustion" constitutes a proper attempt, regardless of success, at obtaining those policy limits. The statute is, therefore, ambiguous, and we may look to extratextual evidence to determine its meaning. See General Statutes § 1-2z.

The legislative history of the guaranty act sheds no light on the extent of the plaintiff's obligation to "exhaust" her rights under the uninsured motorist policy. The legislative history does, however, explain the purpose of the association, which "was established for the purpose of providing a limited form of protection for policyholders and claimants in the event of insurer insolvency. The protection it provides is limited based upon its status as a nonprofit entity and the method by which it is funded. Specifically, the association is a nonprofit legal entity created by statute to which all persons licensed to transact insurance in the state must belong. See General Statutes §§ 38a-838 (8) and 38a-839. When an insurer is determined to be insolvent under § 38a-838 (7), the association becomes obligated pursuant to [General Statutes] § 38a-841, to the extent of covered claims within certain limits. The rates and premiums charged by member insurers are authorized by General Statutes § 38a-849 to include amounts sufficient to recoup the assessments levied upon insurers by the association. Because § 38a-849 provides that insurers may pass on the costs of the assessments made against them by the association, it is in reality policyholders who pay for the protections afforded by the association. Limitations on the association's obligations, therefore, provide another form of protection against increased premiums for policyholders in addition to the primary protection afforded all claimants against losses resulting from insurer insolvency.

"The legislative history confirms that the association was established for the benefit of consumers. At the

public hearing held prior to passage of the bill proposing the creation of the association, Peter Kelly, a member of the state insurance department stated: '[T]his bill provides the means to avoid financial loss to Connecticut residents because of the insolvency of [insurance companies]. . . . In the late 1960s . . . [c]onsumers were being hurt and on a personal scale, an insolvency can be ruinous. . . . [The bill] provides the means for all insurance companies assessed to recover from the entire insured residents of this state the cost of such assessments so that it is really not an assessment on a company but an assessment on the entire residents of the state who are insured after the fact. This is spreading the risk amongst all Connecticut residents. . . . I think you must remember that industry is not paying the cost. This bill provides that Connecticut residents will pay the cost. . . . This bill provides for protections of residents of this state and the residents if any assessments are ever made will pay for the cost of such assessments in their future insurance premiums.' Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1971 Sess., pp. 55–59." *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 451–52, 705 A.2d 1012 (1997).

Inasmuch as the guaranty act is based on a model statute drafted by the National Association of Insurance Commissioners that has been adopted in substantial part by the legislatures of many of our sister states; see 14 H.R. Proc., Pt. 8, 1971 Sess., p. 3624, remarks of Representative Michael Colucci; we find guidance in on point court decisions from those states with respect to this issue of first impression in our state.[14] See

[14] We note that the defendants raised this issue in *Doucette* v. *Pomes*, supra, 247 Conn. 466–70, but we did not address therein the extent of recovery necessary to satisfy the exhaustion requirement of § 38a-845 (1). Instead, we concluded that the plaintiff's employer, who had sought recovery from the defendants pursuant to a direct action under General Statutes § 31-293, was not subject to § 38a-845 (1) because "[i]t has no insurance policy to which it can turn for recovery. There are no limits for it to exhaust. It

*Doucette* v. *Pomes,* supra, 247 Conn. 464 (relying on model regulations and report to conclude that self-insurer is not "insurer" under guaranty act). These decisions demonstrate that our sister states have taken divergent views toward the competing policy considerations created by the act.

We begin with the distinct minority position, seemingly endorsed by the plaintiff in her brief, which is that a policyholder satisfies applicable exhaustion requirements by entering into a good faith settlement with the uninsured motorist insurer, even if that settlement is for less than the policy limits. See *Watts* v. *Dept. of State,* 394 Mich. 350, 357, 231 N.W.2d 43 (1975); *Richard* v. *Johnson,* 234 N.W.2d 22, 24–25 (N.D. 1975); see also *Alabama Ins. Guaranty Assn.* v. *Colonial Freight Systems, Inc.,* 537 So. 2d 475, 476 (Ala. 1988) (relying on second sentence of exhaustion statute, which provided for reduction by " 'amount of any recovery,' " and concluding that plaintiff's recovery from fund should be reduced by $25,000 settlement rather than $50,000 policy limit); *Patel* v. *Stone,* 138 N.C. App. 693, 695–96, 531 S.E.2d 879 (2000) (relying on second sentence of exhaustion statute, which provided for reduction by " 'amount of any recovery' " and concluding that plaintiff satisfied exhaustion requirement by obtaining arbitration award for claim against uninsured motorist carrier, even when award was less than policy limits). These courts conclude that there is no absolute "right"

has no claim under [the plaintiff's] uninsured motorist policy, which is a contractual remedy available to [the plaintiff]." Id., 470.

Moreover, the federal District Court's decision in *Harbor Ins. Co.* v. *Connecticut Ins. Guaranty Assn.,* supra, 711 F. Sup. 70, is inapposite. That case involved a defendant's excess liability insurer who unsuccessfully sought indemnification from the guaranty association after settling all claims with the plaintiff's insureds in a fatal automobile accident case wherein the primary insurer became insolvent. Id., 71. In that case, neither the insureds nor the excess liability insurer sought to recover any moneys from the insureds' uninsured motorist carrier. Id., 74. Accordingly, it is not instructive on the issue herein.

to the full value of the policy, and that the insured's "right" to a given sum in a particular case is determined on a case-by-case basis. See *Patel* v. *Stone, supra,* 696 ("[p]laintiff pursued her claim in a legally sanctioned manner, and thus, exhausted her 'right' under the [insurance] policy").

Other states require the complete recovery of the limits of the uninsured motorist policy before the plaintiff may recover from the uninsured tortfeasor through the state guaranty fund or personally, if the damages exceed the available uninsured motorist coverage. These states emphasize the meaning of the word "exhaust" as "to use up entirely," as well as the guaranty act's purpose of serving as a "last resort" protection for the policyholders of insolvent insurers. They also note the possibility of collusive settlements between plaintiffs and their still solvent uninsured motorist insurers. See *Witkowski* v. *Brown,* 576 A.2d 669, 671–72 (Del. Super. 1989); *Carrier* v. *Hicks, supra,* 316 Or. 348–49; *Burke* v. *Valley Lines, Inc.,* 421 Pa. Super. 362, 369–70, 617 A.2d 1335 (1992);[15] *Prutzman* v. *Armstrong,*

---

[15] In *Burke* v. *Valley Lines, Inc., supra,* 421 Pa. Super. 368–69, the court relied on Justice Zappala's concurring opinion in the Pennsylvania Supreme Court decision in *Bethea* v. *Forbes,* 519 Pa. 422, 548 A.2d 1215 (1988). In *Bethea,* the majority did not reach the exhaustion issue, but concluded that the plaintiff properly could bring an action against an uninsured defendant covered by the state's guaranty fund, without first having obtained the limits of his uninsured motorist policy. Id., 426–27. The majority concluded that there were no guaranty act issues presented before a judgment entered against the defendant, and that "[t]he [a]ssociation's role in the case was strictly in terms of defending the alleged tortfeasor with respect to the claims against him; it was not defending against a claim under the Insurance Guaranty Act." Id., 427. In a concurrence, Justice Zappala stated that he would have reached the exhaustion issue, and concluded that "settlement of the uninsured motorist claims for less than the limits of coverage is a failure to exhaust the claimants' rights under the policy which precludes recovery under the Act." Id., 428. Justice Zappala emphasized the guaranty association's role as the "last resort for payment of a claim" and the possibility of collusive low settlements between plaintiffs and their insurers. Id., 428–29. We also note that another member of the Pennsylvania Supreme Court, emphasizing the public policy favoring settlement of disputes, con-

90 Wash. 2d 118, 121–22, 579 P.2d 359 (1978); see also *Jackson Brook Institute, Inc.* v. *Maine Ins. Guaranty Assn.*, 861 A.2d 652, 657 (Me. 2004) (relying on plain meaning of word " 'exhaust' " in concluding that settlement of directors and officers insurance claim for less than policy limits did not satisfy statute).

The majority of the states considering this issue have staked out a middle ground between these two poles. We find particularly persuasive the Illinois Supreme Court's decision in *Hasemann* v. *White*, 177 Ill. 2d 414, 416, 686 N.E.2d 571 (1997), wherein the plaintiffs brought a personal injury action against the defendants to recover damages for injuries arising from an automobile accident. The defendants' insurer became insolvent and the state guaranty fund took over the defense. Id. The two plaintiffs made a claim against their uninsured motorist carrier and settled for $7500 and $3000 under a policy with a $50,000 per person, $100,000 per accident limit. Id. Thereafter, the plaintiffs obtained arbitration awards of $9000 and $4000 against the defendants, and those awards were set off by the amount actually received by the plaintiffs under their uninsured motorist coverage. Id., 416–17. The defendants appealed, claiming that the awards should have been set off by the full policy limits, rather than the actual amounts received, because the plaintiffs had failed to "exhaust" their rights under their uninsured motorist policy, as was required by the applicable statute.[16] Id., 417.

---

cluded a "good faith" settlement would satisfy the exhaustion requirement. Id., 437–38, 437 n.2 (Larsen, J., concurring and dissenting).

[16] The Illinois nonduplication of recovery statute at issue in *Hasemann* v. *White*, supra, 177 Ill. 2d 418, provided: "Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy." (Internal quotation marks omitted.)

After reviewing the various states' different approaches to determining a plaintiff's obligation with respect to the exhaustion of his or her rights under uninsured motorist coverage, the Illinois court adopted the majority position, which it described as "a middle course" holding that "a settlement does constitute an exhaustion of rights, but that the guaranty fund's liability is reduced by the full amount of the uninsured-motorist policy limits, regardless of the amount that the claimant actually received under the settlement." Id., 419. The court noted "an obvious tension between the other possible constructions of the nonduplication provision and the language and purpose of the [guaranty act]. On the one hand, limiting the [Illinois Insurance Guaranty Fund's] setoff to the amount actually received by the claimant under the settlement would invite collusion and provide little incentive for a claimant to pursue a full and fair settlement with his own carrier. On the other hand, requiring a claimant to fully litigate his uninsured-motorist claim in order to satisfy the exhaustion requirement would be contrary to our public policy which encourages the settlement of claims." Id., 420. The court also stated that the majority rule is consistent with the "[t]he rationale behind the nonduplication provision [which] is to insure that the Fund is a recovery of last resort by requiring that the claimant first seek to cover his loss with funds available from other insurers. Consistent with this rationale, a claimant who settles with his uninsured-motorist carrier for less than the policy limit should be assumed to have received the policy limit for purposes of assessing Fund liability. When a claimant settles with his own carrier for less than the policy limits, the claimant must bear the risk of settling too cheaply." Id., 420–21. The Illinois court then concluded that the state guaranty fund was not liable in *Hasemann* "[b]ecause the Fund is entitled to a setoff in the amount of the policy limits of the claimants'

uninsured-motorist policy and the claimants' loss does not exceed their uninsured-policy limits . . . ." Id., 421.

The majority of the other states considering this issue have concluded consistently with the Illinois decision in *Hasemann*. See *California Ins. Guarantee Assn.* v. *Liemsakul*, 193 Cal. App. 3d 433, 440–41, 238 Cal. Rptr. 346 (1987) (stating that reduction must be by policy limit rather than amount recovered from uninsured motorist coverage because different result would be "antithetic to the [insurance guaranty] scheme"); *Colorado Ins. Guaranty Assn.* v. *Harris*, 827 P.2d 1139, 1142 (Colo. 1992) (Discussing the public policy favoring settlement of disputes and stating that "[a]llowing [the plaintiff] to recover from the [guaranty fund], subject to a reduction by the policy limit of her uninsured motorist coverage, avoids windfall recoveries and duplicate recoveries . . . . This approach also places on the claimant the burden of maximizing his or her uninsured motorist recovery."); *Hetzel* v. *Clarkin*, 244 Kan. 698, 706, 772 P.2d 800 (1989) (concluding in case wherein defendant's coverage with insolvent insurer was greater than plaintiff's uninsured motorist coverage, "[e]ven if [the plaintiff's] settlement with her insurance company was $5,000 short of the policy limit, she should still be able to collect the excess coverage that the [g]uaranty [a]ssociation had a duty to provide [$50,000 less the maximum she could have recovered from her uninsured coverage]"); *Kenny* v. *Hoschar*, 675 So. 2d 807, 810 (La. App. 1996) ("Where the insured settles with the other insurer for an amount under policy limits but damages exceed the policy limits, [state guaranty association] is entitled to a credit against the insured's damages for the full amount of the other insurer's policy limits. Thus, the insured may recover . . . only to the extent that the insured's damages exceed the policy limits of the other insurance."); *Belongia* v. *Wisconsin Ins. Security Fund*, 195 Wis. 2d 835, 847–48, 537 N.W.2d 51 (App.

1995) (rejecting good faith settlement approach and concluding that plaintiff was not entitled to collect from guaranty fund when his total damages exceeded his uninsured motorist settlement, but were less than his policy limits).

We, therefore, conclude that a claimant satisfies the exhaustion requirement of § 38a-845 (1) by pursuing coverage under her own uninsured motorist policy prior to attempting to collect either from the guaranty fund or the tortfeasor personally. The claimant's failure to obtain the full policy limits from her own coverage does not preclude her from collecting either from the guaranty fund or the tortfeasor personally, but her recovery from either of those sources is reduced by the full amount of those policy limits. Indeed, this conclusion is consistent with the language of the second sentence of § 38a-845 (1), which provides that "[a]ny amount payable on a covered claim under said sections shall be reduced by the *amount recoverable* under the claimant's insurance policy or chapter 568." (Emphasis added.) See *California Ins. Guarantee Assn.* v. *Liemsakul*, supra, 193 Cal. App. 3d 439–40 (stating that plain meaning of "recoverable" means "[c]apable of being recovered" and that "[i]t is noteworthy that the statute uses the term recoverable, implying any recovery that might have been possible, not just recovery that was actually made" [internal quotation marks omitted]).

Moreover, this middle ground also is the best effectuation of the various relevant public policies. It is consistent with our "[p]ublic policy [that] favors and encourages the voluntary settlement of civil suits." *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 531, 803 A.2d 311 (2002); cf. *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 341, 789 A.2d 459 (2002) ("policy considerations [encouraging settlement] are equally applicable to claims arising under our workers' compensation

statutes").[17] It also protects the funds of the association as a guarantor of last resort, and averts the deleterious financial consequences that otherwise might be caused by an automobile accident for both uncompensated accident victims and tortfeasors rendered uninsured by the insolvency of their insurers.

We also note that this middle ground comports with our well established position that the presence or lack of insurance is not a factor in the determination of liability. See *Dubay* v. *Irish*, 207 Conn. 518, 524, 542 A.2d 711 (1988) ("[W]e [have] rejected the claim that the outcome of a case should depend upon whether the defendant has insurance. We continue to believe that different rules of law should not be fashioned for the insured and the uninsured." [Internal quotation marks omitted.]); *Cristini* v. *Griffin Hospital*, 134 Conn. 282, 285, 57 A.2d 262 (1948) ("If the charitable institution is not liable for the negligence alleged, it cannot be made liable because it took out insurance which would cover a judgment recovered against it. The fact is irrelevant to the question of liability."); see also *Lee* v. *Fulton Concrete Co.*, 195 Ga. App. 348, 349, 393 S.E.2d 449 (1990) (declining to reach exhaustion issue under insurance guaranty act because it "will only become a relevant inquiry if and when [the plaintiff] obtains a judgment"); *Johnson* v. *Braddy*, 376 N.J. Super. 215, 219–20, 869 A.2d 964 (App. Div. 2005) (concluding that tortfeasor uninsured because of insurer

---

[17] Indeed, as Justice Larsen of the Pennsylvania Supreme Court aptly noted in discussing his state's public policy encouraging the settlement of disputes: "In the practical world of claims settlement, it is not unusual for insurance carriers to seek to settle claims for sums less than the policy limits. Even where liability is clear and damages are extensive, many carriers will often attempt to settle for an amount close to or slightly less than its policy limits. . . . Often it may make economic sense for an injured claimant to settle for a slightly reduced sum in order to obtain much needed funds 'now' instead of 'later.' " *Bethea* v. *Forbes*, 519 Pa. 422, 437–38, 548 A.2d 1215 (1988) (Larsen, J., concurring and dissenting).

insolvency is personally responsible for damages in excess of guaranty association's statutory maximum liability); *Bethea* v. *Forbes*, 519 Pa. 422, 426–27, 548 A.2d 1215 (1988) (Declining to reach statutory exhaustion claim because "[i]t is clearly within the realm of possibility that . . . the alleged tortfeasor in the instant matter, injured the plaintiffs to an extent that exceeded the uninsured motorist coverage . . . . Therefore, the plaintiffs' settlement under that policy cannot deprive them of the legal right to seek full compensation from the tortfeasor, even if the effort presents little or no prospect for satisfaction.").

In the present case, the trial court directed a verdict for the defendant on the basis of an incorrect construction of § 38a-845 (1), namely, that the plaintiff was required to obtain completely the full policy limits of her uninsured motorist coverage before she could recover any moneys from the defendant. We, however, conclude that the plaintiff's failure to obtain the remaining $20,000 under her policy does not by itself preclude her from pursuing additional recovery from the defendant so long as she can prove that she has suffered damages in excess of her policy limit of $100,000.[18] The trial court directed a defendant's verdict before the jury had an opportunity to make a determination of the plaintiff's damages, and also did not rule as

---

[18] The plaintiff appears to argue that she is pursuing only $20,000 in damages from the defendant after her $80,000 uninsured motorist settlement because, under § 38a-336 (b); see footnote 12 of this opinion; her right to recovery is limited to $100,000, which is the limit of her uninsured motorist policy. We note that this is an incorrect statement of the law because this statutory limit applies only to the amount recoverable under her uninsured or underinsured motorist coverage. Damages in excess of that amount may be collected from the defendant personally, should he have sufficient assets. In this respect, the defendant is no different than any other tortfeasor against whom a judgment in excess of his insurance policy limits has been rendered. See, e.g., *Johnson* v. *Braddy*, supra, 376 N.J. Super. 219–20 ("if a plaintiff's damages exceed the tortfeasor's insurance coverage, the tortfeasor remains personally liable for the excess").

a matter of law that the plaintiff had not suffered at least $100,000 in damages. Our review of the evidence of economic and noneconomic damages submitted during the plaintiff's case-in-chief, including the plaintiff's medical bills, lost wages and testimony about her pain and suffering, indicates that, as the plaintiff properly argued to the trial court, a jury reasonably could have found that she had incurred more than $100,000 in damages. Accordingly, the trial court improperly directed a verdict for the defendant, and a new trial is required.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.